# United States Court of Appeals for the Federal Circuit

## 2014-1599

SOFTVIEW LLC,

*Appellant,*

*v.*

KYOCERA CORPORATION and MOTOROLA MOBILITY LLC,

*Appellees,*

*and*

MICHELLE K. LEE, DEPUTY UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DEPUTY DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE,

*Intervenor.*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2013-00004 and IPR2013-00257.*

## 2014-1600

SOFTVIEW LLC,

*Appellant,*

*v.*

KYOCERA CORPORATION and MOTOROLA MOBILITY LLC,

*Appellees.*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Nos. IPR2013-00007 and IPR2013-00256.*

## APPELLEES' CONSOLIDATED RESPONSE BRIEF

*Counsel Listed Inside Cover*

OCTOBER 20, 2014

ERIC C. COHEN
MICHAEL A. DORFMAN
MICHAEL S. TOMSA
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe Street
Chicago, IL 60661
(312) 902-5200

*Attorneys for Appellee*
*Kyocera Corporation*

JOHN C. ALEMANNI
WILLIAM H. BOICE
ADAM H. CHARNES
CANDICE C. DECAIRE
DAVID A. REED
CHRISTOPHER SCHENCK
ALYSON L. WOOTEN
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, NC 27101
(336) 607-7300

*Attorneys for Appellee*
*Motorola Mobility LLC*

# CERTIFICATE OF INTEREST

1.  The full name of every party or amicus represented by me is:

    Kyocera Corporation

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    The real parties in interest are the same as the parties represented.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    KATTEN MUCHIN ROSENMAN LLP, Eric C. Cohen, Richard P. Bauer, Michael A. Dorfman, Michael S. Tomsa.


October 20, 2014 ___                    /s/ Eric C. Cohen _____
Date                                     Signature of counsel

## CERTIFICATE OF INTEREST

1.  The full name of every party or amicus represented by me is:

    Motorola Mobility LLC

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    The real parties in interest are the same as the parties represented.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    Motorola Mobility LLC is a wholly-owned subsidiary of Motorola Mobility Holdings, Inc. Motorola Mobility Holdings, Inc. is a Delaware corporation. More than 10% ownership of Motorola Mobility LLC (formerly, Motorola Mobility Inc.) is owned by Google Inc., a publicly-held company. Google Inc. has entered into an agreement with Lenovo Group Ltd., under which Lenovo Group Ltd. plans to acquire Motorola Mobility LLC. Lenovo Group Ltd. is a publicly-held company.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    KILPATRICK TOWNSEND & STOCKTON LLP, John C. Alemanni, William H. Boice, Adam H. Charnes, Candice C. Decaire, David A. Reed, Christopher Schenck, Alyson L. Wooten.


October 20, 2014       /s/ John C. Alemanni
Date             Signature of counsel

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................. i

CERTIFICATE OF INTEREST ................................................................ ii

STATEMENT OF RELATED CASES ...................................................... xi

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE....................................................................3

I.      APPELLEES SUBMIT A SINGLE RESPONSE BRIEF ...................3

II.     INTRODUCTION...............................................................................3

III.    SUMMARY OF PROCEDURAL HISTORY .....................................4

IV.     THE PATENT, PROSECUTION HISTORY, AND PRIOR
        ART ...................................................................................................6

        A.      The Technology ........................................................................6

        B.      SoftView's Alleged Invention ..................................................8

V.      THE BOARD'S DECISION .............................................................10

        A.      Claim Construction .................................................................10

        B.      Obviousness ............................................................................10

        C.      Objective Indicia of Non-Obviousness...................................15

        D.      The Board Properly Denied SoftView's Motion to
                Exclude...................................................................................15

SUMMARY OF THE ARGUMENT .......................................................16

ARGUMENT ..........................................................................................17

I.      STANDARD OF REVIEW ..............................................................17

II.    THE BOARD'S CLAIM CONSTRUCTION IS FULLY
SUPPORTED BY THE INTRINSIC EVIDENCE............................18

    A.    The "Preserves" Limitation Was Added By Amendment
Long After The Application Was Filed ....................................18

    B.    The Board's Construction is Consistent With The
Context in which the "Preserves" Limitation Appears in
the Claims ...................................................................................20

        1.    The Board's Interpretation Is Consistent With The
Claims ...............................................................................21

        2.    SoftView's Proposed Construction Is Not
Consistent With The Claims...........................................24

    C.    SoftView's Attempts to Minimize Its Prosecution
Definition of the "Preserves" Limitation are Misplaced .........25

        1.    SoftView Defined the "Preserves" Limitation
During Prosecution ........................................................26

        2.    The Prosecution History Does Not Support
SoftView .........................................................................29

    D.    The Specification Supports The Board's Construction ............31

    E.    SoftView's Other Arguments Lack Merit ................................33

        1.    SoftView Mischaracterizes Appellees Claim
Construction Of "Original" In The District Court
Case..................................................................................33

        2.    SoftView's Illustrations Lack Evidentiary Support .......33

III.    THE BOARD'S OBVIOUSNESS DETERMINATION IS
FULLY SUPPORTED BY THE EVIDENCE AND IS
CORRECT AS A MATTER OF LAW...............................................34

    A.    The Level of Ordinary Skill in the Art .....................................36

    B.    The Challenged Claims are Obvious In View of Zaurus
and Pad++ ..................................................................................37

1.     Zaurus Discloses a Mobile Device That Has All of the Hardware Elements of the Challenged Claims and a Zoomable Browser .................................. 37

2.     Pad++ Discloses a Zoomable Browser that Preserves the Original Page Layout, Functionality and Design ........................................................ 39

3.     The Board Correctly Found Motivation to Combine Zaurus and Pad++ ............................. 43

4.     The "Preserves" Limitation is Obvious in view of Zaurus and Pad++ .......................................... 45

C.     SoftView's Makeweight "Smart Zooming" Argument Lacks Merit .................................................................... 47

D.     The Challenged Claims are Obvious in View of Zaurus, Hara and Tsutsumitake ........................................... 50

1.     The Board Correctly Found that Hara Teaches "Preserving" the Original Layout, Functionality, and Design ................................................... 51

2.     SoftView's Argument that Hara Teaches Away is Without Merit ................................................. 52

3.     The Board Correctly Found that Tsutsumitake Discloses Zooming and "Preserving" ............................ 53

4.     One of Skill in the Art Would Have Been Motivated to Combine Zaurus, Hara and Tsutsumitake ................................................. 54

IV.     THE BOARD PROPERLY REJECTED SOFTVIEW'S SO-CALLED "OBJECTIVE INDICIA" .................................. 55

V.     THE BOARD DID NOT DEPRIVE SOFTVIEW OF DUE PROCESS ................................................................ 59

A.     Acceptance of the Grimes Declaration did not Violate Due Process .................................................. 61

- v -

B.     The Allowance of Claim Construction Briefing Did Not Violate Due Process .................................................................64

CONCLUSION ..........................................................................................65

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Cordis Corp.*,
   710 F.3d 1318 (Fed. Cir. 2013) ...........................................................63

*Advanced Fiber Tech. (AFT) Trust v. J & L Fiber Services, Inc.*,
   674 F.3d 1365 (Fed. Cir. 2012) ................................................. 25, 28

*Al-Site Corp. v. VSI Int'l, Inc.*,
   174 F.3d 1308 (Fed. Cir. 1999) ...........................................................58

*ArcelorMittal France v. AK Steel Corp.*,
   700 F.3d 1314 (Fed. Cir. 2012) ...........................................................55

*Bettendorf v. St. Croix County*,
   631 F.3d 421 (7th Cir. 2011) ...............................................................61

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ...............................................................62

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ...........................................................................18

*Cordis Corp. v. Medtronic Ave, Inc.*,
   511 F.3d 1157 (Fed. Cir. 2008) ...........................................................34

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
   110 F.3d 1573 (Fed. Cir. 1997). ..........................................................56

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
   527 F.3d 1318 (Fed. Cir. 2008) ...........................................................60

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) ...............................................................................35

*In re Am. Acad. of Sci. Tech Ctr.*,
   367 F.3d 1359 (Fed. Cir. 2004) ................................................. 18, 26

*In re Antor Media Corp.*,
   689 F.3d 1282 (Fed. Cir. 2012) ...........................................................42

*In re Bailey*,
 182 F.3d 860, 871 (Fed. Cir. 1999) ....................................................60

*In re Biedermann*,
 733 F.3d 329 (Fed. Cir. 2013) ..........................................................63

*In re Bigio*,
 381 F.3d 1320 (Fed. Cir. 2004) .........................................................17

*In re Buchner*,
 929 F.2d 660 (Fed. Cir. 1991) ..........................................................42

*In Re Hyon*,
 679 F.3d 1363 (Fed. Cir. 2012) .........................................................17

*In re ICON Health & Fitness, Inc.*,
 496 F.3d 1374 (Fed. Cir. 2007) .........................................................18

*In re Kotzab*,
 217 F.3d 1365 (Fed. Cir. 2000) .........................................................17

*In re Sneed*,
 710 F.2d 1544 (Fed. Cir. 1983) .........................................................44

*In re Yamamoto*,
 740 F.2d 1569 (Fed. Cir. 1984). ........................................................18

*KSR Int'l Co. v. Teleflex Inc.*,
 550 U.S. 398 (2007) ........................................................... 17, 43, 44

*McGinley v. Franklin Sports, Inc.*,
 262 F.3d 1339 (Fed. Cir. 2001) .........................................................44

*Nat'l Ass'n of Home Builders v. Norton*,
 340 F.3d 835, 852 (9th Cir. 2003) ......................................................63

*Ormco Corp. v. Align Tech., Inc.*,
 463 F.3d 1299 (Fed. Cir. 2006) .........................................................55

*Para–Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*,
 73 F.3d 1085 (Fed. Cir. 1995) ..........................................................17

*Phillips v. AHW Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)..................................................... 20, 25

*Plantronics, Inc. v. Aliph, Inc.*,
724 F.3d 1343 (Fed. Cir. 2013) ...........................................................55

*Rambus Inc. v. Rea*,
731 F.3d 1248 (Fed. Cir. 2013) ...........................................................18

*Riccio v. Cnty. of Fairfax, Va.*,
907 F.2d 1459 (4th Cir. 1990)...........................................................60

*Saffran v. Johnson & Johnson*,
712 F.3d 549 (Fed. Cir. 2013) ...........................................................26

*SoftView LLC v. Apple Inc., et al.*,
No. 1:10-cv-389-LPS (D. Del.) ................................................. xi, 5, 10

*Stratoflex, Inc. v. Aeroquip Corp.*,
713 F.2d 1530 (Fed. Cir. 1983) ...........................................................58

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
No. 13-854 (U.S.) ...........................................................18

*Tokai Corp. v. Easton Enters. Inc.*,
632 F.3d 1358 (Fed. Cir. 2011)...........................................................57

*Young v. Dept. of Housing & Urban Dev.*,
706 F.3d 1372 (Fed. Cir. 2013) ...........................................................63

**Statutes**

28 U.S.C. § 1295(a)(4)(A) ...........................................................1

35 U.S.C. § 103(a) ...........................................................17

35 U.S.C. § 315(c) ...........................................................5

35 U.S.C. § 319 ...........................................................1

35 U.S.C. §§ 141(a) ...........................................................1

**Other Authorities**

77 Fed. Reg. 48,756, 48,767 (Aug. 14, 2012) .........................................................60

**Rules**

37 C.F.R. § 41.50(b) ............................................................................................63

37 C.F.R. § 42.100(b) (2013)................................................................................18

37 C.F.R. § 42.23 .................................................................................................60

37 C.F.R. § 42.64(b)(2)..........................................................................................5

37 C.F.R. §42.121 ................................................................................................64

Appellees certify that no appeals from these Patent Trial and Appeal Board *inter partes* reviews were previously before this or any other appellate court. Both of SoftView's appeals are from final written decisions in *inter partes* reviews by the Patent Trial and Appeal Board of related patents: U.S. Patent No. 7,461,353 and U.S. Patent No. 7,831,926.

There is a patent litigation pending in the United States District Court for the District of Delaware filed by Patent Owner SoftView LLC ("SoftView") that will be directly affected by the Court's decision in the pending appeal: *SoftView LLC v. Apple Inc., et al.*, No. 10-389-LPS (D. Del.) (Consolidated) (the "District Court Case"). The defendants in that case include: Petitioner Kyocera Corporation ("Kyocera"); Petitioner Motorola Mobility LLC ("Motorola"); and certain of their affiliates. Other defendants include: Apple Inc. ("Apple"); Dell, Inc.; HTC Corp.; Huawei Technologies Co. Ltd.; LG Electronics, Inc.; Samsung Electronics Co., Ltd.; AT&T Mobility LLC; and certain of their affiliates. This case has been stayed pending the outcome of these consolidated appeals. *SoftView LLC v. Apple Inc.*, *et al.*, No. 10-389-LPS, 2013 WL 4757831 (D. Del. Sept. 4, 2013).

Several *ex parte* and *inter partes* reexamination proceedings presently pending before the United States Patent and Trademark Office will be directly affected by the Court's decision in the pending appeal: Reexamination Control

Nos. 95/000,634; 95/000,635; 90/009,994; 90/009,995; 95/002,126; and 95/002,132. Those reexaminations have been stayed pending the outcome of the Board's proceedings. A172-74; A593-95.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 141(a) and 319 as appeals from final written decisions issued in *inter partes* reviews by the Patent Trial and Appeal Board (the "Board") of the United States Patent and Trademark Office. The jurisdictional statement of Appellant SoftView LLC incorrectly cites to 35 U.S.C. § 329.

# STATEMENT OF THE ISSUES

1. Whether the Board properly construed the limitation, "preserves the original page layout, functionality and design," in view of the claims, the specification, and the prosecution history?

2. Whether the Board correctly determined that the challenged claims are obvious over the prior art references, which disclose all of the limitations in the claims?

3. Whether the Board correctly found that a person of ordinary skill in the art would have been motivated to combine the prior art of record, where the motivation is disclosed explicitly in the prior art and where the prior art is directed to the same problems?

4. Whether the Board properly dismissed SoftView's objective indicia arguments where SoftView failed to show a nexus between the claims and the Apple iPhone and Android smartphones that were the subject of SoftView's objective indicia arguments?

5. Whether the Board deprived SoftView of due process when the Board denied SoftView's motion to exclude Appellee's reply brief and reply expert declaration, which squarely responded to SoftView's response to the petition and to SoftView's expert declaration, and when the Board allowed both parties to file briefs addressing claim construction?

## I.  APPELLEES SUBMIT A SINGLE RESPONSE BRIEF

Appellees submit this combined brief in Appeal No. 2014-1599 (regarding U.S. Patent No. 7,831,926) and its companion case,[1] Appeal No. 2014-1600 (regarding U.S. Patent No. 7,461,353), which involve the same substantive issues. Although SoftView filed separate opening briefs on each appeal, the arguments in those briefs are substantially identical.

## II.  INTRODUCTION

This is an appeal following a decision by the Patent Trial and Appeal Board ("Board") in response to petitions for *inter partes* review filed by Appellees Kyocera Corporation ("Kyocera") and Motorola Mobility LLC ("Motorola") against selected claims of two patents owned by Appellant SoftView LLC ("SoftView").

The challenged claims are generally directed to devices, such as wireless mobile devices, that include a <u>zoomable web browser</u>. In the Board proceedings, SoftView relied on two claim limitations to attempt to patentably distinguish its claims over the prior art. One limitation generally recites translating or processing web content into scalable content that "preserves the original page layout, functionality and design of the content defined by its original format when scaled

---

[1] D.I. 23.

and rendered" (the "preserves" limitation). The other limitation, which SoftView coined as "smart zooming," generally recites tapping on part of a web page to zoom in on it.

The Board ordered the parties to submit supplemental briefing on the claim construction issue of the "preserves" limitation. In its Final Written Decision the Board rejected both parties' constructions of the "preserves" limitation and adopted its own broadest reasonable construction. Applying its construction, the Board found that the "preserves" limitation was disclosed by combinations of prior art references. The Board also found that the prior art disclosed tapping on content in a web page to zoom in on it. The Board found that SoftView's evidence of "objective considerations" was insufficient as a matter of law. Based on these findings, the Board found the challenged claims obvious in view of the prior art.

Finally, the Board rejected SoftView's motion to exclude Appellees' reply brief and the reply declaration of their expert, finding that both fairly responded to SoftView's opposition brief and to the declaration of SoftView's expert.

## III.   SUMMARY OF PROCEDURAL HISTORY

On October 4, 2012, Appellee Kyocera filed separate petitions for *inter partes* review of certain claims[2] of SoftView's U.S. Patent No. 7,461,353 ("the

---

[2] Claims 1, 33, 36, 43, 48, 41, 42, 58, 59, 118, 138, 139, 149, 183, 252, 283 and 317 of the '353 patent and claims 30, 31, 40, 41, 43, 52, 55, 59, 72 and 75 of the '926 patent.

'353 patent") (IPR2013-00007) and U.S. Patent No. 7,831,926 ("the '926 patent")
(IPR2013-00004). A108-71 ("'353 Petition"); A526-92 ("'926 Petition"). The '353
patent (A837-86) and the '926 patent (A8093-132) are related, and share a
common specification. The challenged claims include all claims asserted by
SoftView against Appellees in *SoftView LLC v. Apple Inc., et al.*, No. 1:10-cv-389-
LPS (D. Del.).

On December 21, 2012, the Board issued orders staying six *ex parte* and
*inter partes* reexamination proceedings for the '353 and '926 patents that had been
filed by Motorola and Apple Inc., pending the outcome of Kyocera's petition.
A172-74; A593-95. On March 29, 2013, the Board instituted an *inter partes* review
proceeding as to all of the challenged claims. A175-214; A596-638. Following
institution, Motorola filed its own petitions (A9290-349; A9370-431), along with
motions for joinder under 35 U.S.C. § 315(c). The Board granted Motorola's
petitions and motions to join. A9351-69; A9432-50. SoftView filed its responses to
the petitions on July 19, 2013, along with one expert declaration supporting both
responses. A215-85; A639-707; A8774-822. Appellees filed their consolidated
reply briefs on September 23, 2013, along with two reply expert declarations[3].
A286-311; A708-33; A6648-741; A8005-19. On October 18, 2013, at the Board's

---

[3] In response to objections served by SoftView, Appellees subsequently submitted
two supplemental reply expert declarations under 37 C.F.R. § 42.64(b)(2). A8020-
35; A8036-38.

request, SoftView and Appellees filed claim construction briefs addressing the "preserves" limitation. A339-45; A347-60; A761-73. On January 7, 2014, the Board heard three hours of oral argument. A428-525. On March 27, 2014, the Board issued final written decisions, finding each of the challenged claims of the '353 and '926 patents to be unpatentable. A1-37 ('353 patent); A38-73 ('926 patent). These appeals followed.

## IV.  THE PATENT, PROSECUTION HISTORY, AND PRIOR ART

### A.    The Technology

The content of Internet web pages is stored on servers in multiple file formats, including HTML (Hyper Text Markup Language), XML (Extensible Markup Language) and graphic GIF and JPEG files. A861, 1:61-66; A8117, 2:4-9.

HTML code includes "'markup' elements (tags) that generally prescribe the layout and formatting of various objects, including plain text and graphic objects, embedded between tag pairs." A868, 15:20-24; A8124, 15:20-24. The HTML tags prescribe how the text and hyperlinks are formatted, but they do not dictate the layout. A6662-70. The rendering engine of the Web browser processes the HTML code, dictates the layout, and displays the web page on the screen of the user's device. *Id.*; A869, 17:31-41; A8125, 17:31-41.

Both at the time of the alleged invention, and now, to view a web page, *e.g.*, www.nytimes.com, a user either types in the URL or clicks a hyperlink. This

causes the browser on the user's device to retrieve the HTML code and associated links for that page, and then perform a "pre-rendering" process to determine where to place the various objects on the screen of the device. A868, 15:45-50 (referring to Fig. 5); A869, 17:26-30; A8124, 15:45-50; A8125, 17:26-30.

The specification admits that the pre-rendering process, shown in the first three steps of Fig. 5 (A853; A8109) was in the prior art and commonly performed by conventional browsers. A869, 17:31-38; A8125, 17:31-38. As shown in Fig. 5, the pre-rendering process consisted of three steps. First, the rendering engine of the browser would parse the HTML content to identify layout information tags. A853, item 150; A868, 15:45-50; A8109, item 150; A8124, 15:45-50. Second, the rendering engine would separate content into objects and define a "bounding box" for each object. A853, item 152; A868, 16:18-22; A8109, item 152; A8124, 16:18-22. Third, "the page layout would be defined based on the bounding boxes." A853, item 154; A869, 17:16-17; A8109, item 154; A8125, 17:16-17.

During prosecution of the '353 patent, SoftView recognized that different web browsers, such as Mozilla, Netscape, Firefox, and Internet Explorer, would display a web page differently from each other. A1104-22. Thus, a person of ordinary skill in the art understood that HTML code has no layout until it is rendered (A6662-70), and, as a result, Web developers had very little control over how a Web page would look on a particular person's computer. A7180-83, at

A7181; A6662-70, at A6668, ¶41 ("each browser (Netscape, Internet Explorer, AOL, etc.) presents the [Web] pages a little bit differently"); *compare* A8163 (Netscape) *with* A8164 (IE 7).

### B.     SoftView's Alleged Invention

According to the specification, the alleged invention "deviates substantially from the prior art by using the various object layout data generated during the pre-rendering process [the first three steps shown in Fig. 5] to generate a scalable vector representation of the original page content." A869, 17:42-45; A8125, 17:42-45. It did this by generating a vector for each object from a pre-defined "page datum" point on the page to a point on each object (*e.g.*, the upper left hand corner of the bounding box). A869, 17:45-67; A8125, 17:45-67; *see also* A853 and A8109 at Fig. 5, items 156, 158, 160.

The idea of using vector graphics to process web pages was not new. The specification admits that the use of simple vector format ("SVF"), a file format used in CAD, had been "under consideration by the W3C (World Wide Web Consortium) for adoption as a standard for vector content on the World Wide Web." A862, 4:50-63; A8118, 4:42-55; *see also* A2823-39 (SVG); A2875-933 (SVF). Scalable web browsers were not new either. During prosecution, SoftView further conceded that scalable web browsers, such as the Opera browser, were known in the art. A1131-48.

The application for the '353 patent, filed in 2005, was a divisional of a 2001 application. After SoftView's principal owner and his patent attorney became aware of the iPhone in January 2007 (A7982-8004, at A7994 and A8003-04), they submitted a series of amendments to the specifications and claims, resulting in a total of 318 claims.[4] The examiner rejected claims that recited "substantially retains the original page layout" or words to that effect, as indefinite (A1433-40). On May 20, 2008, SoftView filed an amendment replacing the "substantially retains" phrases with "preserves the original page layout, functionality and design." *See, e.g.*, A1030-31. In the same amendment, SoftView defined the scope of the "preserves" limitation: "the scope of the terminology . . . refers to preserving the design <u>as interpreted by the browser</u>[5] while at different zoom levels and panned views, as opposed to rendering the content identically to how it is rendered by a particular desktop browser that may interpret the page design differently." A1119 (footnote omitted); *see also* A8167-68. In the prosecution of the '926 patent, the examiner amended the claims to add the same limitation. A8265-96. On September

---

[4] (A1659-72 (preliminary amendment 3/31/07); A1617-43 (preliminary amendment 6/6/07); A1585-611 (preliminary amendment 7/19/07); A1546-70 (preliminary amendment 8/31/07); A1255-387 (amendment 12/9/07 responding to 10/23/07 office action); A1159-225 (supplemental amendment 1/12/08); A1028-123 (supplemental amendment 5/20/08)).

[5] All emphasis within quotations is added unless indicated otherwise.

10, 2010, five months after it had sued Apple for infringing the '353 patent,[6] SoftView filed "comments" defining the "preserves" limitation substantially the same as in the prosecution of the '353 patent. A8150-212, at A8166-67. On December 3, 2010, SoftView amended its Complaint to allege infringement of the '926 patent.[7]

## V.     THE BOARD'S DECISION

### A.     Claim Construction

The Board construed the limitation, "preserve[s] an original page layout, functionality and design" to mean "maintains the features of the web page's capabilities and appearances in a manner consistent with the translated portion of HTML code defining those capabilities and appearances." A8-13, at A13; A50. The Board based its definition on the context in which the "preserves" limitation appeared in the claims and in the specification. *Id.* The Board applied the same definition to the "preserves" limitation in both the '353 patent and the '926 patent because the parties' arguments were the same. A8; A13; A45.

### B.     Obviousness

The Board found that the challenged claims of both the '353 and '926 patents were obvious over the Zaurus and Pad++ references, in some cases,

---

[6] *SoftView LLC v. Apple Inc., et al.*, 1:10-cv-389-LPS (D. Del. May 10, 2010) (D.I. 1).

[7] *Id.* (D.I. 27).

combined with other prior art. A36-37; A72-73. It found that Zaurus was a "handheld PDA with a wireless communication means to access web content" that provided "vertical and horizontal scrolling and magnified and reduced views of web pages" that had a "touch sensitive screen and a browser that has the ability to process HTML-based content up to HTML 3.2." A16; A53. The Board found that although Zaurus did "not have the ability to render multiple frames properly," it could display pages composed of multiple frames one frame at a time. *Id.*

SoftView does not contest, either before the Board or on this appeal, that the Zaurus PDA, shown below, disclosed all of the hardware limitations recited in the claims: processing means, a wireless device, a display, memory, storage and wireless access to the Internet. A1865-67; A1874-89; A6695-97.



A1879; A6695. SoftView does not dispute that Zaurus was also capable of zooming on a web page, as shown below.



* To switch the screen from a reduced view to a magnified view, touch Reduce ▼ followed by Magnify. To switch back from a magnified view to a reduced view, touch Magnify ▼ followed by Reduce.

A2411; A6700.

The Board found that Zaurus disclosed the ability to switch from a reduced view to a magnified view, with left and right scrolling to view material not on the screen. A17; A54. It found that Zaurus provided hyperlink functionality, and that it disclosed touching the screen to switch to a selected page. *Id.* Further, the Board found that "[t]o the extent that the browser in Zaurus provides a limited implementation of HTML, Zaurus preserves the layout and design of the web page defined by the translated portion of the HTML-based web content." A17; *see also* A53-54. Finally, the Board found that even with Zaurus's limited implementation of HTML, "a person using a Zaurus PDA would understand that the same web page as the one being used in connection with a desktop browser was being

displayed. Thus, Zaurus falls within the scope of Patent Owner's stated understanding of its proposed claim construction." A18; A55.

The Board found that the Pad++ browser, which was disclosed in a series of publications by Bederson, *et al*., "was being developed for use on platforms ranging from high-end graphics workstations to PDAs and interactive set-top boxes," and that "using Pad++, one's whole desktop could be zoomable and that this feature 'seems especially attractive for systems which have small screens, such as handheld computers (i.e., PDAs).'" A18; A55 (quoting A2821). The Board rejected SoftView's argument that one would not be motivated to combine the Pad++ browser with Zaurus because of "technical difficulties." A18-19; A55-56. It noted that Pad++ allowed a user to designate any page as the current focus by clicking on it, as further support for the motivation to use Pad++ on a PDA. *Id*.

The Board rejected SoftView's argument that Pad++ did not disclose the original layout, functionality and design because the Pad++ browser "supports only a small subset of HTML." *Id*. Although SoftView's expert opined that Pad++ disclosed the web page only <u>after</u> it had been rendered by the Pad++ browser, the Board observed that this was also true of the '353 and '926 patent specifications. A19-20; A56-57. The patents nowhere depict a display produced by a browser as it would appear on a conventional desktop computer. A20; A57. With respect to the figures showing web pages on a Palm device, the Board found that "one cannot tell

how well the display on the Palm device preserves the original layout, function and design of the HTML-based code as viewed on a conventional desktop." A20-21; A57-58. The Board also noted that the claims did not require that all HTML-based web content be translated. It found that both Pad++ and Zaurus disclose preserving the layout, functionality and design of the part of the web page that is translated or processed, listing a litany of reasons why one skilled in the art would be motivated to combine the teachings of Zaurus and Pad++. A22-23; A59-60.

SoftView characterized the claims reciting tapping on a column or image to zoom on it as "smart zooming.[8]" A24; A60. The Board found that Zaurus discloses using a touch screen to zoom in on a column or image causing the display to be re-rendered with the column or image fitting across the display. A25; A61. It also found that Pad++ included commands such as "center" and "centerbbox" to center and scale items to fill all or part of a screen, as well as the ability to specify the width of an item shown on the screen. A25-26; A61-62. Further, the Board found that "Pad++ could be designed for use on handheld devices with small screens and the expedient of tapping the screen corresponds to clicking with a mouse on a large screen device." A27; A63. Thus, the Board found the challenged claims obvious.

---

[8] Claims 48, 51, 52 and 317 of the '353 patent; claims 31, 40, 41, 43, 55, 59, 72 and 75 of the '926 patent.

## C.     Objective Indicia of Non-Obviousness

SoftView sought to rely on the success of Apple's iPhone as its objective indicia of non-obviousness. A31; A67. The Board rejected this argument for multiple reasons, finding that SoftView failed to prove that the iPhone sales were the "direct result of the unique characteristics of the claimed invention," noting other features of the iPhone, Apple's extensive marketing, and Apple's extensive distribution network. A32-33; A68-69.

## D.     The Board Properly Denied SoftView's Motion to Exclude

SoftView tried to avoid the claim construction and obviousness issues by moving to exclude Appellees' reply brief and their expert's reply declaration. A33; A69. The Board rejected SoftView's motion, holding that the reply brief and the reply declaration fairly responded to SoftView's arguments and evidence in SoftView's responses to the petitions. A33-36; A69-72.

## SUMMARY OF THE ARGUMENT

SoftView's challenge to the Board's construction of the "preserves" limitation should be rejected. SoftView's proposed construction would add an additional limitation to the claims, contradicts the way SoftView defined the limitation in the same prosecution amendment in which it was added, and, if adopted, would render the claims indefinite. Moreover, under any of the proffered constructions of the "preserves" limitation, substantial evidence supports the Board's findings that the "preserves" limitation was obvious over Zaurus and Pad++, and the Board's ultimate conclusion that the challenged claims are obvious over the prior art is correct as a matter of law. SoftView's reliance on the so-called smart-zooming limitation is also misplaced, because it was clearly disclosed in the prior art.

Substantial evidence also supported the Board's determinations that sales of the accused iPhone and Android smartphones did not prove commercial success or other objective indicia supporting SoftView's alleged invention.

Finally, there is no merit to SoftView's "due process" argument, which was waived because it was not raised below. SoftView had ample opportunity to brief and argue all of the issues before the Board, and is in no position to contend that its "due process" rights were violated.

This Court should affirm the Board's well-reasoned decision that the challenged claims are unpatentable.

## ARGUMENT

## I.    STANDARD OF REVIEW

"A patent for a claimed invention may not be obtained . . . if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious . . . to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103(a). Obviousness is a legal question based on underlying factual determinations. *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 427 (2007). Those underlying factual determinations include "[t]he identification of analogous prior art," *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004); "[w]hat the prior art teaches and whether it teaches toward or away from the claimed invention," *Para–Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc*., 73 F.3d 1085, 1088 (Fed. Cir. 1995); and the "existence of a reason for a person of ordinary skill to combine references." *In Re Hyon*, 679 F.3d 1363, 1365-66 (Fed. Cir. 2012).

The Board's legal conclusions are reviewed *de novo* and its factual findings are reviewed for substantial evidence. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938). The Board's claim construction is a legal conclusion that is reviewed *de novo*. *Rambus Inc. v. Rea*, 731 F.3d 1248, 1252 (Fed. Cir. 2013). In the event that the Supreme Court changes the standard of review for claim construction, however, the Board's fact findings that underlie its claim construction should be given deference. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, No. 13-854 (U.S.) (argued Oct. 15, 2014).

## II. THE BOARD'S CLAIM CONSTRUCTION IS FULLY SUPPORTED BY THE INTRINSIC EVIDENCE

In *inter partes* review, claim terms are given their broadest reasonable construction. 37 C.F.R. § 42.100(b) (2013). *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004). Under this standard, the Board looks to the specification to see if it provides a definition for claim terms, but otherwise applies a broad interpretation. *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007). This methodology produces claims with only justifiable breadth. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

### A. The "Preserves" Limitation Was Added By Amendment Long After The Application Was Filed

The sole claim construction issue on this appeal involves the limitation, "preserves the original page layout, functionality and design of the content defined by its original format when scaled and rendered," and slight variations. This limitation was added to the claims of the '353 patent by amendment on May 20,

2008. A1028-123, at A1030-31 (claim 71); *see also* A8264-96 ('926 patent). Acting as its own lexicographer during prosecution, SoftView defined the scope of this limitation in the same amendment: "this refers to preserving the design <u>as interpreted by the browser</u> while at different zoom levels and panned views, <u>as opposed to rendering the content identically to how it is rendered by a particular desktop browser that may interpret the page design differently</u>." A1092-123, at A1119 (footnote omitted). SoftView further explained that all variations of the "preserves" limitation in all the claims have the same meaning. A1120. In the subsequent prosecution of the application for the related '926 patent, the "preserves" limitation was added by examiner's amendment. A8269-96, at A8270; A8276; A8282-83; A8289. Following the examiner's amendment, SoftView submitted "Comments" (A8150-212) seeking to avoid the examiner's reasons for allowance and defining the "preserves" phrase in the same manner as in the prosecution of the '353 patent. A8166-67.

In sharp contrast to its prosecution definition, SoftView argued the polar opposite to the Board. SoftView contended "that the original page layout, functionality, and design that must be preserved is the layout 'as viewed on a conventional desktop browser.'" A9, citing A347-60, at A355-56; A45, citing A639-707.

Petitioners responded, applying SoftView's prosecution definition, and proposed that the "preserves" limitation should be construed so that "what is being preserved is the layout of the webpage <u>after</u> it has been processed by the browser." A9, citing A339-60; A45, citing A761-73. The Board noted that "Petitioner's proposed construction is consistent with statements made by [SoftView] during prosecution of the '353 patent . . ." A9; *see also* A45. The Board, however, adopted its own broadest reasonable construction, concluding that the "preserves" limitation should mean, "maintains the features of the web page's capabilities and appearances in a manner consistent with the translated portion of HTML code defining those capabilities and appearances." A13; A50. The Board's broadest reasonable construction should be affirmed.

## B. The Board's Construction is Consistent With The Context in which the "Preserves" Limitation Appears in the Claims

In accordance with *Phillips v. AHW Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), the Board carefully considered the context of the claims in which the "preserves" limitation appears. "[T]he words of a claim 'are generally given their ordinary and customary meaning' . . . that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Phillips*, 415 F.3d at 1312-13. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed

term appears, but in the context of the entire patent, including the specification."

*Id.* at 1313.

### 1. The Board's Interpretation Is Consistent With The Claims

There are two types of claims in which the "preserves" limitation appears: the "translating" form[9] and the "processing" form[10].

The "translating" form of the "preserves" limitation reads, in relevant part, with slight variations:

> **[A]** rendering a browser interface via which a user is enabled to <u>request access to an original Web page, the Web page comprising HTML-based Web content</u> having <u>an original format defining</u> an original width and height of the Web page and <u>an original page layout, functionality, and design</u> of content on the Web page;
>
> **[B]** in response to a user request to access the Web page, <u>retrieving the Web page</u> via the wireless communication means, and
>
> **[C]** **translating** <u>at least a portion of the HTML-based Web content from its **original format** into scalable content</u> that supports a scalable resolution-independent representation of the Web page that <u>preserves the original page layout, functionality, and design</u> of the content defined by its original format <u>when scaled and rendered</u>;"

A871, 22:26-40 ('353 patent, claim 1).

---

[9] '353 patent, claims 1, 33, 118, 138 and 139 of the '353 patent; '926 patent claims 30, 31, 40, 41 and 43.

[10] '353 patent claims 36, 43, 48, 51, 52, 58, 59, 149, 183, 252 and 283; '926 patent claims 52, 55, 59, 72 and 75.

Contrary to SoftView's argument,[11] the "original format," of the HTML-based Web content recited in clause [A] is the format prescribed by the HTML code because it has not yet been retrieved (the step of clause [B]). A864, 7:56-63; A8120, 7:45-52. In the prosecution history of the '353 patent, SoftView explained that "in some cases, the Web page may reference content that is never retrieved when the Web page is retrieved by the browser." A1111-12.

Clause [C] of the claim recites "translating at least a portion of the HTML-based Web content from its original format into scalable content . . . that preserves the original page layout, functionality and design of the content defined by its original format when scaled and rendered[.]" A871, 22:34-40. As the Board aptly concluded, what is "preserved" can be no more than what was translated in the first instance. A11-12; A47-48. Thus, the "preserves" limitation logically means, in the context of the "translating" claims, that the portion of the HTML web content that is translated, "maintain[s] the features of the web page's capabilities and appearances in a manner consistent with the translated portion of HTML code defining those capabilities and appearances." A15; A50.

There is no merit to SoftView's argument[12] that only claim 30 of the '926 patent recites "preserves . . . the at least a portion of HTML-based content." First,

[11] '353 Brief at 24, '926 Brief at 23.

[12] '353 Brief, at 32-33, '926 Brief at 31-32.

SoftView did not make this argument before the Board, and thus waived it. Second, both claim 30 of the '926 patent and claim 1 of the '353 patent recite "translating <u>at least a portion</u> of the HTML-based [web] content . . . ." A871, 22:15-44 (claim 1); A8129, 26:1-34 (claim 30). Regardless of the additional "at least a portion" phrase, it is axiomatic that if only "at least a portion" is translated in the first instance, that is all that can be preserved, as the Board found. *See generally* A8-13; A44-51.

The "processing" form of the "preserves" limitation reads (with slight variations) as follows:

> **[A]**   rendering a browser interface via which a user is enabled to request access to a Web page comprising HTML based <u>Web content defining an **original** page layout, functionality, and design of content</u> on the Web page;
> **[B]**   retrieving the Web page via the wireless communications device, and
> **[C]**   <u>processing HTML-based Web content to produce scalable content</u>; and
> **[D]**   employing <u>at least one of the scalable content</u> or data derived therefrom to,
> <u>render the Web page on the display</u>; and
> <u>re-render</u> the display in response to associated user inputs to enable the Web page to be <u>browsed at various zoom levels while preserving the **original** page layout, functionality, and design of the Web page content at each zoom level and panned view.</u>

A873, 25:41-56. Clauses [A] and [B] are similar to the same clauses in the "translating" form of the claims. The Board found that the first rendering of the

web page in clause [D] "is not limited to one that preserves the original page layout, function, and design." A12; A48. Moreover, only "at least one of the scalable content" that has been processed is initially rendered. A873, 25:48. So, it is clear from the claim language that the initial rendering does not include all HTML content. And, as the Board found, it follows that to "re-render . . . at various zoom levels" can only result in preservation of the "at least one of the scalable content" that was initially rendered in the first place. Thus, the Board rejected SoftView's argument and held that under the broadest reasonable construction, the "preserves" limitation could not be construed to require preservation of the web page as viewed on a conventional desktop browser. A12-13; A48.

## 2. SoftView's Proposed Construction Is Not Consistent With The Claims

The Board rejected SoftView's proposed construction because "the claims do not refer to a conventional desktop browser, and [SoftView's] proposed construction does not define a conventional desktop browser." A9; A45. In short, the Board properly rejected SoftView's transparent attempt to avoid the prior art by re-writing the claims to recite the additional limitation, "as viewed on a conventional desktop browser." A9-10; A45-46.

With respect to Claim 30 of the '926 patent, the Board observed "[c]laim 30 cannot be interpreted to preserve a particular conventional desktop layout because

claim 30 does not recite <u>what</u> portion of the HTML-based content that defines the conventional desktop layout is scaled and rendered." A48 (emphasis original); *see also* A11-12.

SoftView's is in no position to argue that the Board "rewrites the '353 claim language." '353 Brief at 32; '926 Brief at 31. SoftView's proposed construction would add an entirely new limitation to the claims: "as viewed on a conventional desktop browser." '353 Brief at 22; '926 Brief at 21. The Board did not rewrite the claims; to the contrary, it interpreted the "preserves" limitation in view of the claims, specification, and prosecution history.

### C. SoftView's Attempts to Minimize Its Prosecution Definition of the "Preserves" Limitation are Misplaced

This Court has not directly considered the extent to which the Board may rely on the prosecution history to determine the broadest reasonable construction of a claim term. Appellees submit that where, as here, a claim limitation not found in the specification is added during prosecution and is defined by the inventors in the same amendment that added it, <u>the broadest reasonable construction should at least include the inventors' definition</u>. *Cf., Advanced Fiber Tech. (AFT) Trust v. J & L Fiber Services, Inc.,* 674 F.3d 1365, 1372-73 (Fed. Cir. 2012) (district court correctly relied on definition provided by patentee during prosecution), *citing Phillips*, 415 F.3d at 1317 ("the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention

. . .”). This is especially true where, as here, there is evidence that the prosecution history definition is consistent with the understanding of a person of ordinary skill in the art. A6656-73, ¶¶24-55. *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d at 1364 (broadest reasonable construction "must be consistent with the one that those skilled in the art would reach"); *cf., Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) (inventor's unqualified assertion during prosecution provided an "affirmative definition for the disputed term").

### 1. SoftView Defined the "Preserves" Limitation During Prosecution

Contrary to SoftView's arguments, SoftView acted as its own lexicographer and defined the "preserves" limitation during prosecution in a manner that entirely contradicts its proposed definition. '353 Brief at 39-49, '926 Brief at 38-48. SoftView first added the "preserves" limitation on May 20, 2008, during the prosecution of the '353 patent to overcome an indefiniteness rejection of the phrase "substantially retains the original page layout . . . ." A1028-123; A1433-40. SoftView amended the claims as follows:

> "~~substantially retains~~ preserves the original page layout, functionality and ~~attributes~~ design of the content defined by its original format when scaled and rendered."

A1030-31. In a section spanning over 18 pages, SoftView explained the technology in detail. A1104-20. SoftView told the examiner that even a conventional desktop Web browser might not retrieve all content associated with a

Web page because the browser might not be capable of supporting certain content.

A1111-12. SoftView demonstrated that Internet Explorer displayed the same Web

page differently from Netscape, as is shown below:



Netscape Navigator 9 Browser

Microsoft Internet Explorer 7 Browser

A1114-15 (red boxes added to highlight differences in Web pages rendered by Netscape and Internet Explorer browsers). SoftView concluded, "[e]ven when rendering the same Web page source content (*i.e.*, the HTML code definition of the Web page), conventional Web browsers may not render the (non-scaled) Web page identically." A1117. In addition, SoftView explained that each browser determines how a hyperlink is activated, and that hyperlinks may not work on a zoomed-out view. A1118.

Based on its lengthy explanation of the technology, SoftView <u>defined the scope</u> of the "preserve" limitation as follows:

> <u>With respect to the scope of the terminology</u> "preserving the [overall layout, functionality, and] design" of the content, <u>this refers to preserving the design as interpreted by the browser</u>[8] while at different zoom levels and panned views, <u>as opposed to rendering the content identically to how it is rendered by a particular desktop browser that may interpret the page design differently</u>. . . . [T]he page layout (to be preserved) is determined as interpreted by the browser, rather than as a comparison to how it is rendered by a particular desktop browser.

A1119. Footnote 8 further explained, "[m]ore particularly, differences in page interpretation will generally be a function of the browser's rendering engine (*a.k.a.* layout engine)." *Id.* There can be no dispute that a patentee is acting as its own lexicographer when it states, "the scope of the terminology . . . refers to . . . ." *Cf., Advanced Fiber*, 674 F.3d at 1372-73. In the same amendment, SoftView stated that all claims with variations of the "preserve . . . original page layout" limitation should be construed to have the same scope. A1120-21.

28

In the prosecution of the '926 patent, SoftView defined the "preserve" limitation in the same way: "[w]ith respect to preserving the original page layout, the page layout (to be preserved) is determined as interpreted by rendering/layout engine components, rather than as a comparison [as] to how the page might be rendered by a particular desktop browser." A8166-67. SoftView explained, "when a browser rendering engine encounters content or a CSS element it doesn't recognize, it simply ignores is [sic]." A8169. Also, "several web sites . . . include mouse 'hover-over' menus . . . [but since] there is no mouse or equivalent on a typically [sic] mobile device, the browser's rendering/layout engine may be configured to ignore support of such functionality." A8169-70. SoftView's prosecution definition is consistent with the understanding of a person skilled in the art. A6658-73.

## 2.    The Prosecution History Does Not Support SoftView

SoftView's "disclaimer" argument is belied by the prosecution history. The portions of the prosecution history quoted by SoftView[13] do not define the "preserves" limitation. They are taken completely out of context.

The first quote[14] is part of the discussion of the technology that leads up to SoftView's definition of the scope of the preserves phrase. It does not define the

---

[13] '353 Brief at 40-41, '926 Brief at 39-40.

[14] '353 Brief at 40, '926 Brief at 39.

phrase. The language SoftView quoted from page A1104 is followed by 15 pages of technical discussion that culminate in SoftView's underline(definition) of "the scope of the terminology" of the "preserves" limitation. A1119-21. SoftView cannot run away from the fact that it underline(defined) the "preserves" limitation very specifically. *Id.* The other passages SoftView quotes are either prior to the amendment that added the "preserves" limitation (A1372; A1382), or describe the demonstration SoftView conducted for the examiner (A1092-93).

SoftView also mischaracterizes statements made by the examiner. During the May 5, 2008 interview, the examiner agreed only that SoftView's proposed amendment seemed to overcome the section 112 rejection. A1027. The examiner did not agree with SoftView's characterization of the invention. *Id.*

In an effort to distract from its prosecution definition of the "preserves" limitation, SoftView incorrectly relies on images it included in an amendment dated September 9, 2010 during prosecution of the '926 patent. '353 Brief at 43-47, '926 Brief at 42-46. None of those images are found in the patent specification or were supported by an expert declaration. They appear to be images SoftView generated in 2010, nine and a half years after the date its grandparent application was filed. Moreover, in the same paper, SoftView again explicitly defined the "preserves" limitation in the same way as in the prosecution of the '353 patent:

> Even when rendering the same Web page source content
> (*i.e.*, the HTML code definition of the Web page),

30

conventional Web browsers may not render the (full scale) Web page identically. Under aspects of embodiments of the invention the overall layout and appearance (design) of the Web page representations defined by the HTML code for the Web page (as interpreted by the rendering/layout engine) are preserved at various zoom levels and panned views. That is, the preservation is relative to how the page layout and design of the Web page content is interpreted by the rendering/layout engine employed for a particular implementation, and is not relative to how the Web page might appear on a particular desktop browser, although they might appear the same or substantially similar if using the same rendering/layout engine.

A8166. SoftView's prosecution statement that "conventional desktop browsers may not render the full scale web page identically" undercuts its present claim construction argument. '353 Brief at 48, '926 Brief at 47. It demonstrates that "as viewed on a conventional desktop browser" is, itself, ambiguous.

## D. The Specification Supports The Board's Construction

The Board correctly determined that the specification does not show a comparison between the same web page displayed on both a "conventional desktop browser" and on a mobile device. A20; A57. Thus, contrary to SoftView's arguments, the specification does not support SoftView's proposed construction. '353 Brief at 35-39, '926 Brief at 34-38.

SoftView's reliance on the "look and feel" language in the specification is misplaced. *See* '353 Brief at 36-37, '926 Brief at 35-36. That language is not used in connection with the "preserves" limitation, nor could it, because the "preserves"

limitation was added long after the specification was written. Moreover, the Board's construction results in a claim that maintains the look and feel of the HTML code that is actually translated or processed.

The specification provides an example of HTML code. A866-68; A8122-24. It explains the three-step pre-rendering process used by conventional browsers (A869, 17:31-34; A8125, 17:31-34): (1) "a pre-rendering parsing of the HTML . . . to determine where to place the various objects on the display page" (A868, 15:43-50; A8124, 15:43-50 (referring to block 150 in Fig. 5)); (2) "a page layout is built using bounding boxes for each object" (A868, 16:19-22; A8124, 16:19-22 (referring to block 152 of Fig. 5); and (3) "the page layout is defined based on the bounding boxes" (A869, 17:16-17; A8125, 17:16-17 (referring to block 154 of Fig. 5)). The specification then states that "[a]t this point, the present invention deviates substantially from the prior art by using the various object layout data generated during the pre-rendering process to generate a scalable vector representation of the original page content." A869, 17:42-45; A8125, 17:42-45. Because the bounding boxes are built by the browser, the specification discloses that there is no page layout until the HTML code has been processed by the browser's rendering engine.

### E. SoftView's Other Arguments Lack Merit

#### 1. SoftView Mischaracterizes Appellees Claim Construction Of "Original" In The District Court Case

SoftView mischaracterizes Appellees' claim construction position of "original" in the District Court Case. '353 Brief at 25, '926 Brief at 24. In the District Court Case, the parties agreed that SoftView "disclaimed" web pages, such as "mobile.southwest.com," that are designed specifically for smartphones and are not capable of zooming. A446-47; A508-10. Thus, there is no merit to SoftView's argument that Appellees position in the District Court case is at odds with the Board's construction.

#### 2. SoftView's Illustrations Lack Evidentiary Support

SoftView's attempt to "illustrate" why the Board's construction leads to "absurd" results or "dumbed-down" web pages ('353 Brief at 26-32, '926 Brief at 25-31) is devoid of any citations to the record. The illustrations provided in SoftView's brief appear to have been made up out of whole cloth. *See* '353 Brief at 27-31, '926 Brief at 26-30. There is simply no evidence that the Board's construction would result in the examples shown on those pages.

Contrary to SoftView's argument ('353 Brief at 26, '926 Brief at 25), the Board's construction does not require stripping out page layout, functionality or design. Indeed, the Board's construction requires the browser preserve whatever is translated and processed.

Further, if SoftView's illustrations had any factual basis, it would not be the Board's construction that leads to these results, but SoftView's claims, which do not require that all HTML code be translated or rendered. Moreover, as a matter of law, even if the Board's construction were to result in some "inoperable" embodiments, this Court's precedent requires that it be sustained unless the construction would render all embodiments of a claimed invention inoperable. *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1174 (Fed. Cir. 2008).

## III. THE BOARD'S OBVIOUSNESS DETERMINATION IS FULLY SUPPORTED BY THE EVIDENCE AND IS CORRECT AS A MATTER OF LAW

The Board relied primarily on the Zaurus and Pad++ references, and secondarily on others, to find all of the challenged claims obvious. As is discussed in detail below, substantial evidence supports the Board's findings, and the Board's conclusion that the claims are obvious is correct as a matter of law.

SoftView does not contest the Board's finding that the Zaurus references disclose "extending the web to a mobile, handheld device with a small screen" and a zoomable web browser. A15 (citing A2419-21); A17; A52; A54 (citing A2408; 2411-12). Nor does SoftView contest the Board's findings that the Pad++ references (1) disclose a zooming web browser (A18; A55), (2) explicitly suggested that "a zooming version of the Netscape and Mosaic browser could be implemented using techniques in Pad++" (A23; A59-60), and (3) state that

zooming "seems especially attractive for systems which have small screens, such as handheld computers (*i.e.*, PDAs)." (A18; A55). Thus, the Board found ample motivation to combine the Zaurus and Pad++ references and others. A18-19; A55-56. Based on those findings, the Board determined that all of the challenged claims of the '353 patent[15] and the '926 patent[16] are unpatentable under 35 U.S.C. § 103(a) as obvious over the prior art.[17] A36; A72.

With respect to the '353 patent, the Board found that a preponderance of the evidence shows that all of the challenged claims (except claim 66) are obvious over the combination of Zaurus and Pad++. A13-27. The Board further found that a preponderance of the evidence shows that all of the challenged claims (except claim 66) are obvious over the combination of Zaurus, Hara and Tsutsumitake. A27-31. Finally, the Board found that a preponderance of the evidence shows that claim 66 of the '353 patent is obvious over the combination of Zaurus, Pad++, and

---

[15] Claims 1, 33, 36, 43, 48, 51, 52, 58, 59, 66, 118, 138, 139, 149, 183, 252, 283 and 317.

[16] Claims 30, 31, 40, 41, 43, 52, 55, 59, 72 and 75.

[17] As the Board noted, "[t]he question of obviousness is resolved on the basis of underlying factual determinations including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) where in evidence, so-called secondary considerations." A14; A51 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966))

SVG and also that claim 66 is obvious over the combination of Zaurus, Hara, Tsutsumitake and SVG.[18]

With respect to the '926 patent, the Board found that a preponderance of the evidence shows that all of the challenged claims are obvious over the combination of Zaurus, Pad++ and SVF.[19] A51-63. The Board further found that a preponderance of the evidence shows that all of the challenged claims of the '926 patent are obvious over the combination of Zaurus, Hara, Tsutsumitake and SVG. A64-67.

## A.    The Level of Ordinary Skill in the Art

SoftView's brief is silent on the level of ordinary skill in the art. The field of the alleged inventions of the '353 and '926 patents is characterized as "viewing of Internet content on mobile devices, and . . . processing of Internet and World Wide Web content to scalable forms for resolution-independent rendering and zoom-and-

---

[18] The Board instituted review of claim 66 of the '353 patent based on further combinations with the SVG reference. The propriety of the Board's reliance on the SVG reference for claim 66 was not argued by SoftView before the Board and is not the subject of SoftView's arguments on appeal. A23-33, at 29; '353 Brief at 14 n.2. SoftView therefore concedes that SVG was properly combined with the other references and that SVG supports the Board's findings.

[19] The propriety of the Board's reliance on the SVF or SVG references in the review of the claims of the '926 patent were not argued by SoftView before the Board and are not the subject of SoftView's arguments on appeal. A60; '926 Brief at 14 n.2. SoftView therefore concedes that SVF and SVG were properly combined with the other references and support the Board's findings.

pan enabling the display of content on mobile devices." A6656, citing A8117 at 1:55-60.

Both experts agreed that a person of ordinary skill in the art at the time of the invention would have had a bachelor's degree in computer science, experience in computer hardware and software, and experience in the field. A6656; A8775.

## B. The Challenged Claims are Obvious In View of Zaurus and Pad++

Even if SoftView's construction of the "preserves" limitation were adopted, substantial evidence would support the Board's findings that Zaurus and Pad++ teach "preserving the original page layout, functionality, and design;" that the express disclosures in and related teachings of the references motivate combining the teachings of Pad++ with Zaurus; and, that Zaurus and Pad++ teach tapping to zoom on portions of a web page, including zooming on bounding boxes that contain images or columns.[20]

### 1. Zaurus Discloses a Mobile Device That Has All of the Hardware Elements of the Challenged Claims and a Zoomable Browser

SoftView does not dispute the Board's finding that that "Zaurus discloses extending the web to a mobile, handheld device with a small screen." A15 (citing A2419-21); A17; A52; A54. Nor does SoftView dispute the Board's findings that Zaurus discloses all of the hardware elements of the challenged claims including a

---

[20] '353 patent claims 48, 51, 52 and 317; and '926 patent claims 31, 40, 41 and 55.

processor, wireless communication means to access web content, a touch-sensitive display, and memory. A15-16; A52-53. SoftView does not dispute the Board's finding that Zaurus discloses a zoomable web browser that included "the ability to switch from a reduced view to a magnified view, as well as a left and right scrolling control and a vertical scrolling bar, to view material not currently on the screen." A17; A54 (each citing A2408; 2411-12).

There is no merit to SoftView's argument that Zaurus renders a "dumbed-down" version of an HTML page. '353 Brief at 51, '926 Brief at 50. While the Zaurus browser might display a page differently than a PC would, Zaurus indisputably taught a zoomable browser on a PDA. A2411. SoftView's challenge to the Board's finding that Zaurus discloses the "preserves" limitation, even under SoftView's construction of the term, is similarly meritless. '353 Brief at 50-52 (referring to A18), '926 Brief at 49-51 (referring to A54-55). The Board's finding is based on SoftView's own explanation of the term that "a person using a Zaurus PDA would understand that the same web page as the one being used in connection with a desktop browser was being displayed." A18. If there is a problem with SoftView's explanation of its proposed construction, it emphasizes that the Board was correct in rejecting it.

### 2. Pad++ Discloses a Zoomable Browser that Preserves the Original Page Layout, Functionality and Design

Pad++ provides an example of an HTML browser that preserves the page layout when zooming and panning:



Here is a screen snapshot showing Pad++ displaying an HTML document.

A2767 (full web page).



Here is a zoomed in view of the document. Hotwords are shown in blue - positioning the pointer over a hotword changes its color to red. In this snapshot the pointer was over the 'Pad++: Multiscale interfaces' link.

A2769 (zoomed web page).

SoftView does not and cannot dispute that the zoomed web page shown in the above examples preserves the original page layout and design of the HTML code of that portion of the web page that has been translated or rendered. To the extent that Pad++ may not have processed every then-current HTML tag, substantial evidence supported the Board's finding that implementing the teachings of Pad++ in a full-featured browser would have been obvious to one of ordinary skill in the art. *See* A23; A59-60; A6686-92.

There is no merit to SoftView's attempt to distinguish Pad++ on the ground that Pad++ prototype software downloaded from the Internet by SoftView's expert did not support all HTML code. A245-47; A667-69. The Board found that "Bederson's implementation [in Pad++] of web page zooming appears to be a proof of concept, rather than a mere suggestion." A23; A59-60. The Board correctly found that "[t]he fact that Bederson did not implement all, or even many, of the known capabilities of HTML does not alter the fact that Pad++ demonstrates the concept, suggests it could be applied to the Netscape and Mosaic browsers, and states that it was being designed for use on devices with small screens, such as PDAs." A23; A60. Moreover, the Bederson references themselves suggested that Pad++ teachings could be incorporated into a full-fledged zoomable browser:

> A zooming version of Mosaic and Netscape? This is not such a strange idea. The third example Pad++ application we will look at is a simple Pad++ web browser.

A2766.

Substantial evidence also establishes that a person of ordinary skill could have incorporated the teachings of Pad++ into a standard browser. The '353 and '926 patent specifications both refer to publicly-available software (open source rendering engines) that supported the then-existing features of HTML. A869, 17:31-41; A8125, 17:31-41. Appellees' expert Dr. Grimes offered unrefuted testimony that one of ordinary skill in the art could have either added Pad++ zooming functionality to a prior art rendering engine, such as the open-source Mozilla rendering engine, or added support for additional HTML tags to the Pad++ browser. A6686-92, ¶¶79-93. Dr. Grimes' testified that adding to the existing Pad++ coding to support additional HTML tags, modifying a preexisting browser, or writing original code according to the teachings of Pad++ would have been within the skill of one of ordinary skill in the art. *Id.* SoftView did not depose Dr. Grimes on his reply declaration nor refute the testimony therein.

Moreover, the fact that SoftView's own specification discloses no software for translating HTML into zoomable graphics precludes its argument. Because a patent need not teach, and preferably omits, what is well known in the art, SoftView's failure to disclose software in the specification must mean that a

person of ordinary skill could have written code to apply the teachings of Pad++ to Zaurus. *In re Buchner*, 929 F.2d 660, 661 (Fed. Cir. 1991); *see also In re Antor Media Corp.*, 689 F.3d 1282, 1290 (Fed. Cir. 2012) ("undue experimentation is determined based on both the nature of the invention and the state of the art").

The motivation to use the teachings of Pad++ to develop a full-featured zoomable browser that supported all HTML tags is found in the Pad++ references, which explicitly suggest it. A2766. Further, the evidence supports the Board's finding that one of ordinary skill in the art would have been capable of either adding code to other, conventional browser rendering engines to create a zoomable browser, or by adding additional code for Pad++ to support the remaining HTML tags. A26; A63; A6686-92. Thus, even under SoftView's proposed construction, it would have been obvious in view of Zaurus and Pad++ to provide a browser that scales a webpage while preserving the layout, functionality, and design as they would appear on a conventional desktop browser.

Certain of the challenged claims recite vector-based content to enable scaling.[21] SoftView does not challenge the Board's findings that Pad++ disclosed vector scaling, in a manner similar to SVF. A60. Pad++ notes that "[z]ooming can involve simple geometric scaling," which by definition perfectly preserves whatever is scaled. A2586.

---

[21] '353 patent, claims 33, 43, 183 and 283; '926 patent, claims 30, 31, 40, 41, 43 and 59.

### 3. The Board Correctly Found Motivation to Combine Zaurus and Pad++

The Board's finding of motivation to combine is supported by substantial evidence in the form of both express statements in the Pad++ references and expert testimony that one of skill in the art would have been motivated to combine Zaurus and Pad++. A18-19; A55-56; A6674-704, ¶¶56-117.

Regardless of whether Pad++ was optimized for a large information surface, as SoftView argues[22], that cannot diminish the motivation to combine the Pad++ desktop browser with the handheld Zaurus device, especially where Pad++ states in multiple places that it was also designed for PDAs. A2635 ("[t]he system is being designed to operate on platforms ranging from high-end graphics workstations to PDAs"); A2821 ("Your whole desktop could be zoomable. This seems especially attractive for systems which have small screens, such as handheld computers (i.e. PDA's)."). *Cf., KSR,* 550 U.S. at 420-21 ("The idea that a designer hoping to make an adjustable electronic pedal would ignore Asano because Asano was designed to solve [another] problem makes little sense.").

Substantial evidence in the form of Dr. Grimes's reply declaration (A6674-704) also supports the Board's rejection of SoftView's "assertion that one would not be motivated to port Bederson's Pad++ browser to Zaurus because of technical difficulties resulting from limited computing capacity and system

---

[22] '353 Brief at 56-58, '926 Brief at 55-57.

incompatibilities." A18-19; A55-56. First, "it is not necessary that the inventions of the references be physically combinable to render obvious the invention under review." *In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983). It is the teachings of the prior art references that are to be combined, not the specific devices disclosed in the prior art references. *See also KSR,* 550 U.S. at 425-26 (rejecting the argument that attaching a sensor to the prior art Asano pedal would not work because the Asano pedal was bulky, complex and expensive). Unrefuted evidence demonstrated that a person of ordinary skill was capable of applying the teachings of Pad++ and developing a zoomable browser. A6686-92, ¶¶80-93.

SoftView's argument that the combination would have been inoperative ('353 Brief at 61, '926 Brief at 60) relies on a pre-*KSR* decision, *McGinley v. Franklin Sports*, *Inc.*, 262 F.3d 1339, 1354 (Fed. Cir. 2001). Neither Appellees nor the Board suggested that Pad++ software would be usable on Zaurus: the issue is whether the teachings of the references would render the claims obvious to a person of ordinary skill in the art who could use his or her ordinary creativity to adapt the software. *KSR*, 550 U.S. at 421 ("A person of ordinary skill is also a person of ordinary creativity, not an automaton."). The Board correctly concluded that the claims would have been obvious.

On page 61 of the '353 Brief and page 60 of the '926 Brief, SoftView mischaracterizes the testimony of Scott Forstall, a co-developer of the iPhone's

user interface. Mr. Forstall agreed with the simple proposition that "you couldn't just take a web browsing solution for a desktop and just port it to a mobile phone" without further development work. A8900. He did not testify that a person of ordinary skill would ignore desktop web browsers. Quite the contrary, an exhibit SoftView submitted to the Board recounts that Mr. Forstall's approach to creating software for the iPhone was to "shrink the Mac," *i.e.*, use the software for Apple's desktop computer as a starting point. A8996. *See also*, A6686-92 (Grimes).

Thus, substantial evidence supports the Board's determination that one of ordinary skill in the art would have been motivated to combine the teachings of the Pad++ and Zaurus references. The Pad++ references expressly state that the teachings may be applied to a PDA. A2635; A2821. The disclosure in Pad++ about the usefulness of zooming techniques that would apply to PDAs is particularly relevant to the zoomable browser in Zaurus. A6732-33, ¶¶174-176.

### 4. The "Preserves" Limitation is Obvious in view of Zaurus and Pad++

The substantial evidence discussed in sections B.1-B.3., above, more than supports the Board's findings that Zaurus and Pad++ teach "preserving the original page layout, functionality, and design." A23; A59-60; A6682-94, ¶¶72-98; A6698-700, ¶¶105-109. The Board properly recognized that "[t]he underlying issue is not, as SoftView suggests, whether Zaurus and/or Bederson disclose implementing all of the features of HTML with zooming on a device with a small screen. The issue

is whether, in view of their disclosures, the claims of the [’353 and ’926 patents] would have been obvious under 35 U.S.C. § 103.” A22; A59. Specifically, the Board found that “the original layout, functionality and design of the Web page content is preserved [by Zaurus and Pad++] to the extent it was displayed on the mobile device, i.e., to the extent that the mobile device processed the HTML.” A22-23; A59-60 (citing A2766-73). The Board found that “[a]lthough neither Zaurus nor Bederson implements each and every feature of HTML . . . both Zaurus and Bederson disclose preserving the layout, functionality and design of the part of the web page that is translated . . . or processed . . . .” *Id*.

The Board found that Zaurus “discloses a system that maintains the primary features of a page’s appearance in a manner consistent with the portion of HTML code that the Zaurus browser uses.” A17; A54 (citing A1861; A2375; A2405-12). Therefore, the Board concluded that “[t]o the extent that the browser in Zaurus provides a limited implementation of HTML, Zaurus preserves the layout and design of the web page defined by the translated portion of the HTML-based Web content . . . and that portion of the HTML content which is processed in the retrieved Web page . . . .” *Id*.

Therefore, substantial evidence supports the Board’s findings that Pad++ and Zaurus disclose “preserving the layout functionality and design of the part of

the web page that is translated or interpreted by the rendering engine." A22; A59 (citations omitted).

## C. SoftView's Makeweight "Smart Zooming" Argument Lacks Merit

Certain of the challenged claims[23] recite zooming on certain web page content, such as a column or image, in response to a user input, such as tapping[24]. Claim 51 of the '353 patent is illustrative:

> 51. The mobile hand-held device of claim 36, wherein the Web content includes at least one image, and wherein execution of the instructions performs further operations comprising enabling a user to zoom on an image via a corresponding user input, wherein in response thereto, the display is re-rendered such that the image is rendered to fit across the display.

A873. SoftView terms these elements "smart zooming." SoftView coined the phrase "smart zooming" for oral argument before the Board and now relies on the phrase in this appeal. The phrase appears nowhere in the claims, specification, prosecution history, or briefing below. The phrase obfuscates what is described in the patent, namely, in response to a user input (*e.g.*, tapping), zooming in on a portion of a web page defined by a bounding box that contains content such as a column or image. A855-56; A862; A868; A870.

Specific Pad++ teachings, which SoftView ignores, refute its argument that Pad++ converted an entire HTML web page into a single graphical object and

---

[23] '353 patent, claims 48, 51, 52 and 317; '926 patent, claims 31, 40, 41 and 55.

[24] '353 patent, claim 52.

therefore did not recognize individual elements including images or columns within a web page. '353 Brief at 70, '926 Brief at 69. Substantial evidence supports the Board's conclusion that Zaurus and Pad++ teach zooming on elements to fill a page in response to a corresponding user input. *See* A6705-12. The Board's Final Written Decisions recognize that Pad++ "provides extensive disclosure of zooming user interfaces." A25; A62 (citing A2597-631). Further, Pad++ discloses zooming in on and centering content contained in bounding boxes (*e.g.*, images, columns, and paragraphs) in response to a user input by using commands such as "center" and "centerbbox." *Id*.

Moreover, Pad++ specifically teaches that "[w]hen you click on a piece of text, Pad++ zooms in so that that [sic] text fills the screen horizontally and appears near the top of the screen vertically." A2741.



As explained by Dr. Grimes, Pad++ describes a command called the "center" command for accomplishing zooming operations on bounding boxes containing content, such as text or images:

[12] pathName center [-twostep] tagOrId [time x y [z [portalID ...]]]]

A2504; *see also* A6710-12, ¶¶131-135.

Pad ++ also teaches that the "center" command centers the bounding box on the screen and scales the bounding box so that it fills the specified amount of the screen. A2504. Dr. Grimes explains that "Pad++ provided zooming to have the item (image, text, or any content in a bounding box) fill up a programmable amount of the screen (*e.g.*, 100%) for the largest dimension of the item. A6711-12, ¶135.

Pad++ teaches translating HTML-based Web content to produce Pad++ "objects" that enable zooming and panning of Web pages. A2586; A2588. A Pad++ object "might be a simple object such as a poly-line segment, or a compound object such as an HTML page composed of many characters, line segments and images." A2600. "Objects are stored internally in a hierarchy based on bounding boxes which allow fast indexing to visible objects." A2653. Thus, Pad++ could zoom on any object within the hierarchy, including characters, line segments and images, or the entire web page by, for example, using the "center" command described above. A2504; A6710-12.

The Board also found that Zaurus teaches magnifying or reducing the entire display in response to user activation of the magnify key. A25 (citing A2408; A2411-12); A61. Specifically, the Board found that "[t]he portion of the screen that a user zooms in on or selects to view, however, is determined by the user activating the horizontal scrolling keys and the vertical scrolling bar with the touch screen." *Id.* Thus, the Board held that Zaurus discloses zooming on a desired portion of a screen, *e.g.*, a column or image, via a corresponding user input. A27; A63. The disclosure in Zaurus cited by the Board provides additional evidence that the challenged claims are obvious, and also provides additional motivation to combine Zaurus and Pad++ (*see also supra* Part III.B.3.).

For these reasons, SoftView's arguments regarding the "smart zooming" limitations are without merit. Substantial evidence supported the Board determination that the so-called "smart zooming" claims are obvious in view of Zaurus and Pad++.

### D. The Challenged Claims are Obvious in View of Zaurus, Hara and Tsutsumitake

SoftView's arguments regarding the combinations of Zaurus, Hara and Tsutsumitake disregard the Board's findings that those references disclose additional features. There is no merit to SoftView's argument that one of ordinary skill in the art would not have been motivated to combine the teachings of Zaurus, Hara and Tsutsumitake.

### 1. The Board Correctly Found that Hara Teaches "Preserving" the Original Layout, Functionality, and Design

The Board held that the combination of Zaurus, Hara, Tsutsumitake, SVF and/or SVG renders the challenged claims obvious.[25] Specifically, the Board found that "Zaurus discloses a mobile touch-screen device, with a limited HTML browser, on which a web page can be displayed, magnified and scrolled to view portions of the web page." A27; A64. With regard to Hara, the Board found that "Hara discloses a client device receiving an HTML document from a server, analyzing the HTML to determine whether image tags indicate there is image data to be displayed and processing the images for display and magnification depending upon the resolution of the client device." *Id*. With regard to Tsutsumitake, the Board found that the reference "discloses a device that receives and stores a document in an external format, such as HTML, and converts the document to an internal format suitable for display on a screen of the device, *e.g.*, using information blocks, such that a tag, an X coordinate, and a Y coordinate to indicate the type of information (*e.g.*, text, image) and the display position of each block." A28; A64.

The Board's findings are supported by substantial evidence. Dr. Grimes explained that Hara discloses resizing images on a web page. A6712-14, ¶¶136-41.

---

[25] *See* A36-37; A72-73.

Dr. Grimes further explained that Zaurus discloses zooming on the entire web page. A6712, ¶136; A2411. One of ordinary skill would have recognized that Hara discloses <u>additional</u> functionality applicable to Zaurus. A6712-15, ¶¶136-143; A6726-27, ¶¶166-169. One skilled in the art further would have recognized that Tsutsumitake discloses converting HTML into a scalable vector representation. A6731, ¶173.

The substantial evidence before the Board demonstrated that one of ordinary skill in the art would have combined those references because Zaurus, Hara and Tsutsumitake relate to zooming and panning, and the motivation to improve viewing of HTML content on a PDA existed in the prior art. One of ordinary skill in the art would have recognized that Zaurus combined with Hara or Tsutsumitake renders the challenged claims obvious. Further, the combination would have yielded predictable results.

## 2. SoftView's Argument that Hara Teaches Away is Without Merit

SoftView argues that Hara fails to teach zooming on an entire web page. '353 Brief at 63-64, '926 Brief at 62-63. SoftView also asserts that Hara does not teach resizing in response to user input, and that Hara teaches away by disclosing changing display locations of other information on the page, and resizing images before the web page is displayed. *Id.* SoftView's arguments are red herrings.

As the Board specifically found, Zaurus already teaches zooming on an entire web page in response to user inputs. A17; A54; A2411. Zaurus also teaches preserving the layout, functionality and design of the web page. A6698, ¶¶105-106. One of ordinary skill in the art would have recognized, as the Board found, that Hara discloses the <u>added</u> functionality of zooming on specific elements within the web page. A6712-14, ¶¶136-141. Therefore, SoftView's arguments are without merit and the Board's findings are well-supported by substantial evidence.

### 3.    The Board Correctly Found that Tsutsumitake Discloses Zooming and "Preserving"

Again, SoftView ignores the combination of Tsutsumitake with Zaurus and Hara. Specifically, SoftView asserts that Tsutsumitake does not disclose zooming or scaling, is directed toward documents of various file types, and does not mention retrieving web content over the Internet. '353 Brief at 66, '926 Brief at 65.

Tsutsumitake discloses the conversion from HTML code into scalable content – a vector representation of the HTML code. A6728-31. Specifically, Tsutsumitake discloses converting an external format, such as HTML, into a second format suitable for screen display. *Id.* Thus, substantial evidence supports the Board's finding that Tsutsumitake discloses converting external content, including HTML content, into a scalable vector format. A28-29; A64-65.

SoftView's arguments regarding Tsutsumitake ignore the combined teachings of Zaurus, Hara and Tsutsumitake. SoftView's argument that

Tsutsumitake does not disclose zooming or scaling ignores that Zaurus plainly discloses a zooming web browser. A2411. Similarly, SoftView's argument that Tsutsumitake does not disclose retrieving content over the Internet ignores the disclosure in Zaurus of retrieving web content via a wireless or wired connection. A1861; A1874; A1891; A6728-31. Finally, SoftView's argument that Tsutsumitake teaches converting the format of various types of documents is off base. Tsutsumitake specifically discloses HTML as one type of external format for converting into a scalable vector representation. A2463, ¶[0025].

### 4. One of Skill in the Art Would Have Been Motivated to Combine Zaurus, Hara and Tsutsumitake

The Board's finding that one of ordinary skill in the art would have combined the teachings of Zaurus, Hara and Tsutsumitake is supported by substantial evidence. A29; A65; A6727-31.

Dr. Grimes explained that the three references each "relate to common mobile device technology and are directed at solving [the problem of] zooming and panning of display content." A6731, ¶173; *see also* A6727-31. Dr. Grimes further explained that the "references disclose a known technique to improve similar mobile devices (*e.g.*, PDAs) in the same field of zooming and panning of HTML display content." *Id*. Therefore, because the references were directed to a common field and common technical challenges, and because their combination would yield predictable results, Dr. Grimes explained that one of ordinary skill in the art would

have been motivated to combine the references. *Id*. For these reasons, substantial evidence supported the Board's finding that one of skill in the art would have been motivated to combine Zaurus, Hara and Tsutsumitake, and the Board's decision should be affirmed.

## IV.   THE BOARD PROPERLY REJECTED SOFTVIEW'S SO-CALLED "OBJECTIVE INDICIA"

There is no merit to SoftView's argument that the Board did not properly consider "objective indicia" when reaching its obviousness conclusion. Indeed, the Board specifically considered SoftView's objective indicia arguments at pages 51-59 of its Patent Owner Response (A274-82 and A696-704) and found that the objective indicia "do not establish a nexus with the claimed subject matter." A31; A67. Because SoftView did not establish a nexus with the claimed subject matter, SoftView's evidence is simply not probative of the obviousness question. *ArcelorMittal France v. AK Steel Corp*., 700 F.3d 1314, 1325-26 (Fed. Cir. 2012); *Ormco Corp. v. Align Tech., Inc*., 463 F.3d 1299, 1311-12 (Fed. Cir. 2006). SoftView is wrong when it argues that the Board conducted an improper "post hoc analysis" and did not consider "all evidence pertaining to objective indicia of non-obviousness." *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1355 (Fed. Cir. 2013). In fact, the Board considered and properly rejected SoftView's so-called objective indicia.

On appeal, SoftView asserts that it was error for the Board to reject praise for or commercial success of the iPhone and Android devices as objective indicia of non-obviousness. SoftView's argument is misplaced and substantial evidence supports the Board's conclusion that SoftView failed to establish the required nexus with the challenged claims. The Board correctly recognized that SoftView's arguments concerning the iPhone and Android devices "are predicated on the assumption that the iPhone and Android products implement the features of the subject claims." A31; A67. Appellees are aware of no cases in which an accused product was a basis for commercial success of the invention except for cases in which the accused product had been found to infringe by a court. *See, e.g., Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579, 1582 (Fed. Cir. 1997). There has been no finding that the iPhone or Android phones infringe any claim of the '353 or '926 patents, and SoftView has cited to no authority to support the proposition that commercial success can be attributed to an accused product, absent a finding of infringement. The unverified claim charts that SoftView submitted in this proceeding (A8999-9023) are nothing more than attorney argument, and the Board was right to reject so-called objective indicia based on praise for or commercial success of the accused devices.

Substantial evidence also supports the Board's conclusion that SoftView did not meet its burden of showing that the commercial success of the iPhone and

Android devices is attributable to the claimed features of the asserted patents because SoftView did not establish that the sales are a result of any such features. A31-32; A67-68 (citing *Tokai Corp. v. Easton Enters. Inc.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011)). For instance, SoftView cites articles praising the iPhone browser but "does not address the numerous other features cited as important to the iPhone device." A32; A68. SoftView also failed to establish "that the subject matter of the '353 claims, rather than Apple's extensive distribution network and marketing presence are the reason the iPhone and similar devices have been a success." A32-33; A69. In reaching these conclusions, the Board placed weight upon the declaration of Appellees' expert on marketing and consumer behavior, Dr. Lutz (A8005-19; A8036-38), who "states that the success of such devices can be attributed to numerous factors . . . and that the web browser in the iPhone was just one of the several important features contributing to its success." A33; A69; A8007-08, ¶¶11-12; A8014-17, ¶¶41-55. For these reasons, the Board properly rejected SoftView's objective indicia.

On appeal, SoftView also claims the Board failed to consider SoftView's evidence of long-felt need and the failure of others. However, even assuming that this evidence was true, it is not evidence of long felt need or failure of others. Evidence of long felt need must show that the problem solved by appellant's invention was known but not solved prior to the invention. *See Al-Site Corp. v. VSI*

*Int'l, Inc.*, 174 F.3d 1308, 1325 (Fed. Cir. 1999). To show failure of others, the evidence must establish that others of ordinary skill tried and failed to find a solution for the problem solved by the appellant. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983). SoftView has provided no evidence to demonstrate a long-felt need for its invention or that anyone tried and failed to solve the problem its invention purportedly solves.

In its opening brief, SoftView defines the problem purportedly solved by its invention in several slightly different ways, but essentially as the need to display Internet content designed for a desktop computer on small screen devices, such as cell phones and handheld computers. *See, e.g.*, '353 and '926 Briefs at 8 (". . . display of Internet content (designed for desktop computers) on small screen, low resolution, or different aspect ratio devices, such as cell phones and handheld computers."); '353 Brief at 81-82, '926 Brief at 80-81 (". . . a mobile browser that preserved the layout, functionality, and design of a webpage as they would appear on a conventional desktop browser."). SoftView has presented no evidence that a long-felt need existed for the invention or that anyone was trying to solve this problem.

SoftView contends that WAP was an attempt to solve the problem addressed by the invention. But WAP was clearly not designed to display Internet content designed for a desktop computer on small screen devices, such as cell phones and

handheld computers. Instead, WAP required creating a separate website; it did not allow a desktop web site to be viewed on a small screen device. As Mr. Forstall testified, "[a] website developer would be forced to create a completely separate website just for a WAP browser." A8881, 25:17-19. Thus, SoftView's evidence of long-felt need and the failure of others is irrelevant to the problem purportedly solved by the invention and should not be considered as part of the obviousness determination.

Similarly, SoftView cites a study stating that "48 percent of respondents said they wish they could look up things online when they're on the go, but 58 percent said the mobile web fails to meet their needs." '353 Brief at 81, '926 Brief at 80. Again, the problem that SoftView's claims its invention solves is displaying Internet content designed for a desktop computer on small screen devices, not simply "look[ing] things up online." Thus, this evidence is also irrelevant to the question of obviousness.

## V. THE BOARD DID NOT DEPRIVE SOFTVIEW OF DUE PROCESS

Finally, in a last-ditch effort to resurrect its case, SoftView asserts that the Board violated its due-process rights by "flagrantly disregard[ing] its own procedural rules" in two respects. '353 and '926 Briefs at 4. First, it claims a due process violation when the Board permitted Petitioners to submit a reply declaration by Dr. Grimes and then refused to allow SoftView to file a surreply in

response. Second, SoftView contends that the Board violated due process when Petitioners asserted a "new" claim construction in their reply. '353 Brief at 82-86, '926 Brief at 81-85.

To begin with, this Court should summarily reject SoftView's due process argument because it was not advanced below. This Court has long held that "new arguments will not be decided in the first instance on appeal." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008). SoftView never advanced a due process argument before the Board, though it could have (*e.g.*, in its motion to exclude). Instead, it pressed only the argument that Petitioners had violated the Board's procedural rules—an argument that SoftView does <u>not</u> assert in its appellate brief. For this reason, its due process argument is waived.

Even if properly presented, SoftView's due process argument is meritless. The due process question is not whether the Board violated its procedural rule, 37 C.F.R. § 42.23, or the Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,767 (Aug. 14, 2012), because violation of a procedural rule alone does not run afoul of due process. *See*, *e.g.*, *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1466 (4th Cir. 1990). Instead, all due process required here is that the Board afforded SoftView "an adequate opportunity to be heard" before the Board made its decision. *In re Bailey*, 182 F.3d 860, 871 (Fed. Cir. 1999). For the reasons set forth by the Board, and as explained below, SoftView had such an opportunity below,

and its argument is therefore meritless. SoftView's "procedural due process argument" is merely "a last ditch effort to undo the adequate process because it did not produce the anticipated result." *Bettendorf v. St. Croix County*, 631 F.3d 421, 427 (7th Cir. 2011).

### A.     Acceptance of the Grimes Declaration did not Violate Due Process

During prosecution, Appellant argued that "the scope of the terminology 'preserving the [overall layout, functionality and] design' of the content . . . refers to preserving the design as interpreted by the browser." A1119; A8166-67. In its response brief, however, SoftView argued for the first time that "[s]imply maintaining the layout after a web page has been initially rendered does not meet these claim limitations . . . ." A243; A665. Because SoftView's argument flatly contradicted its prosecution history definition, and because SoftView had not articulated that argument in the district court, Appellees could not have been reasonably expected to anticipate it in their petition, so they addressed it in their reply and supporting Grimes reply declaration.

Allowing Petitioners (*i.e.*, the Appellees in this case) to submit that declaration was not unfair to SoftView. In rejecting SoftView's motion to exclude the Grimes reply declaration, the Board concluded that SoftView's "reply raised several substantive issues that were not raised in the Petition," including "the proper construction of the preserving limitation." A34; A70. Thus, the Board

concluded that "Petitioner was entitled to rebut Patent Owner's arguments concerning the construction of the preserving limitation. . . . We agree with Petitioner that Dr. Grimes' declaration ([A6648-741]) was drawn to issues raised in Patent Owner Response that Petition could not have addressed in the Petition." A34; A70. Moreover, SoftView had a full opportunity to address the Grimes reply declaration at the hearing.

Nothing in SoftView's brief establishes that the Board abused its discretion in not excluding the Grimes declaration. SoftView argues that the material in the Grimes reply declaration could have been submitted earlier because it had relied on Zaurus for the prior art combinations in its petition. The Board found that SoftView's construction of the "preserves" limitation in its response brief was *new* and thus Petitioners could not have addressed it earlier.

SoftView also contends that the Board "compounded this error" by not permitting it to file a surreply. '353 Brief at 83, '926 Brief at 82. SoftView, however, cites no authority holding that the United States Constitution regulates the Board's discretion in determining whether it should accept a surreply. And nothing in the Due Process Clause required the Board to allow SoftView to file yet another brief on the question, when its response brief addressed this issue. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001).

The cases on which SoftView relies are wholly inapposite. *In re Biedermann*, 733 F.3d 329 (Fed. Cir. 2013), applied the rule that, during the examination process, the Board may not rely on a "new ground of rejection" that the applicant had no opportunity to address before the examiner. *Biedermann*, however, was based on 37 C.F.R. § 41.50(b), *see* 733 F.3d at 337, a rule applicable <u>only</u> during the administrative examination process. *Inter partes* review, however, is an adjudicatory process not subject to those administrative rules. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013). In any event, unlike in *Biedermann*, SoftView here had a full opportunity to address the issues presented to the Board, in its supplemental claim construction brief, in its opportunity (not taken) to depose Dr. Grimes, and in oral argument.

Further, in *Young v. Dept. of Housing & Urban Dev.*, 706 F.3d 1372 (Fed. Cir. 2013), this Court found that *ex parte* communications during an arbitration of an employee's grievances were "so substantial," and provided <u>new</u> grounds for employment termination of which the employee was unaware, that due process was violated. Here, by contrast, SoftView had ample opportunities to address the construction of the "preserving" limitation in its response brief and supplemental claim construction brief, as well as at the hearing. And *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003), involved the EPA's failure to follow its <u>substantive</u> (not procedural) rules in making an endangered species

determination, resulting in an arbitrary and capricious decision under the Administrative Procedure Act. That holding simply has no application to the procedural question here.

### B. The Allowance of Claim Construction Briefing Did Not Violate Due Process

The Board allowed <u>all parties</u> to file supplemental briefs on claim construction. Remarkably, SoftView argues that this decision "has been prejudicial to SoftView" and thus violates due process. '353 Brief at 86, '926 Brief at 85. But as explained above and as found by the Board, Petitioners could not have anticipated the claim construction in SoftView's response brief, so the Board allowed supplemental briefing to be fair to all parties. A336; A758. SoftView contends that the briefing "did not remedy the prejudice" because (1) they could not amend "some of the claims to explicitly recite SoftView's claim construction and (2) they were denied a surreply. '353 Brief at 86, '926 Brief at 85. But, as to a possible amendment of claims, SoftView never asked the Board for leave to amend their claims in light of Petitioners' claim construction (*see* 37 C.F.R. § 42.121), so this argument is waived. And, as explained above, the Board did not violate the Constitution by denying SoftView yet another brief to articulate its position, in addition to its response brief and claim construction brief.

## **CONCLUSION**

For the reasons set forth above, the judgment of the Board should be affirmed.


Dated: October 20, 2014

　　　　　　　　　　　　　　__/s/ Eric C. Cohen_____
　　　　　　　　　　　　　　Eric C. Cohen
　　　　　　　　　　　　　　Michael A. Dorfman
　　　　　　　　　　　　　　Michael S. Tomsa
　　　　　　　　　　　　　　KATTEN MUCHIN ROSENMAN LLP
　　　　　　　　　　　　　　525 West Monroe Street
　　　　　　　　　　　　　　Chicago, IL 60661
　　　　　　　　　　　　　　(312) 902-5200

　　　　　　　　　　　　　　*Attorneys for Appellee*
　　　　　　　　　　　　　　*Kyocera Corporation*

　　　　　　　　　　　　　　__/s/ John C. Alemanni_____
　　　　　　　　　　　　　　John C. Alemanni
　　　　　　　　　　　　　　William H. Boice
　　　　　　　　　　　　　　Adam H. Charnes
　　　　　　　　　　　　　　Candice C. Decaire
　　　　　　　　　　　　　　David A. Reed
　　　　　　　　　　　　　　Christopher Schenck
　　　　　　　　　　　　　　Alyson L. Wooten
　　　　　　　　　　　　　　KILPATRICK TOWNSEND & STOCKTON LLP
　　　　　　　　　　　　　　1001 West Fourth Street
　　　　　　　　　　　　　　Winston-Salem, NC 27101
　　　　　　　　　　　　　　(336) 607-7300

　　　　　　　　　　　　　　*Attorneys for Appellee*
　　　　　　　　　　　　　　*Motorola Mobility LLC*

*SoftView LLC v. Kyocera Corporation,* 2014-1599
*and*
*SoftView LLC v. Kyocera Corporation,* 2014-1600

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by KATTEN MUCHIN ROSENMAN LLP, Attorneys for Appellee, Kyocera Corporation to print this document. I am an employee of Counsel Press.

On **October 20, 2014** counsel has authorized me to electronically file the foregoing **APPELLEES' CONSOLIDATED RESPONSE BRIEF** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

| | |
|---|---|
| Morgan Chu, Esq. | Nathan K. Kelley, Solicitor |
| (Principal Counsel) | (Principal Counsel) |
| Alan J. Heinrich | Joseph Matal |
| Samuel Kai Lu | Scott Weidenfeller |
| Irell & Manella LLP | U.S. Patent and Trademark Office |
| 1800 Avenue of the Stars, Suite 900 | Office of the Solicitor |
| Los Angeles, CA 90067 | PO Box 1450, Mail Stop 8 |
| 310-203-7000 | Alexandria, VA 22213 |
| mchu@irell.com | 571-272-9035 |
| aheinrich@irell.com | nathan.kelley@uspto.gov |
| slu@irell.com | joseph.matal@uspto.gov |
| *Counsel for Appellant* | scott.weidenfeller@uspto.gov |
| | *Counsel for Intervenor* |

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

October 20, 2014

/s/ John C. Kruesi, Jr.
John C. Kruesi, Jr.
Counsel Press

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X   The brief contains <u>13,938</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2014</u> in a <u>14</u> point <u>Times New Roman</u> font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

<u>October 20, 2014</u>            <u>/s/ Eric C. Cohen</u>_____
Date                          Eric C. Cohen
                                  *Attorney for Appellee*
                                  *Kyocera Corporation*