No. 2014-1599

IN THE
**United States Court of Appeals**
**FOR THE FEDERAL CIRCUIT**

SOFTVIEW LLC,

*Appellant,*

*v.*

KYOCERA CORPORATION and MOTOROLA MOBILITY LLC,

*Appellees.*

APPEAL FROM
THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD
IN NOS. IPR2013-00004 AND IPR2013-00257

# REPLY BRIEF OF APPELLANT SOFTVIEW LLC

MORGAN CHU
SAMUEL K. LU
ALAN J. HEINRICH

**IRELL & MANELLA LLP**

1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 277-1010

*Attorneys for Appellant*
SOFTVIEW LLC

November 6, 2014

Lawyers Brief Service • Appellate Brief Printers • (213) 613-1013 • (626) 744-2988

# TABLE OF CONTENTS

**Page**


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... v

TABLE OF ABBREVIATIONS ..... vii

INTRODUCTION ..... 1

STATEMENT OF THE CASE ..... 2

ARGUMENT ..... 3

I. THE BOARD'S CONSTRUCTION IS UNREASONABLY BROAD ..... 3

A. The Claim Language Supports SoftView's Construction ..... 3

1. Petitioners And The Board Conflate The "Translating" and "Preserving" Limitations ..... 3

2. "Original Page Layout" Exists Before Translating ..... 4

3. "Portion" Is Not Present In Every Claim ..... 4

4. The Board's Finding Regarding Claim 36 Is Incorrect ..... 5

B. The Prosecution History Supports SoftView's Construction ..... 5

1. Petitioners Rely Upon An Out-Of-Context Statement ..... 5

2. SoftView Made A Clear And Unmistakable Disavowal ..... 6

3. The Examiner Agreed With SoftView's Characterization Of The Claims ..... 8

**Page**


4. The Images From The Prosecution History Are Evidence Of The Meaning Of The "Preserving" Limitation .......... 8

C. The Specification Supports SoftView's Construction .......... 12

1. "Preserving" Is Clearly And Unmistakably Tied To "Maintaining The Look And Feel Of Browsing Such Web Pages With A Conventional Desktop Browser" .......... 12

2. The Board's Construction Is Inconsistent With The Specification .......... 13

3. Petitioners' Citations To The Specification Are Unavailing .......... 14

D. Petitioners' Other Arguments Are Without Merit .......... 15

1. SoftView's Demonstratives Illustrate The Unreasonableness Of The Board's Construction .......... 15

2. "Conventional Desktop Browser" Needs No Construction .......... 17

II. THE BOARD ERRED IN FINDING OBVIOUSNESS .......... 18

A. The "Preserving" Claims Are Not Obvious In View Of Zaurus And Pad++ .......... 18

1. Zaurus Does Not Preserve .......... 18

2. Pad++ Did Not Disclose The "Preserving" Limitation .......... 18

3. The Board Did Not Decide Obviousness Under The Correct Construction .......... 18

4. SoftView Had No Opportunity To Refute Dr. Grimes' "Unrefuted Testimony" .......... 19

5. Applying The Teachings Of Pad++ To Opera, Mosaic, Or Navigator Was Not Obvious .......... 19

**Page**


6. There Was No Motivation To Combine Zaurus And Pad++ .................... 21

a) Pad++: "In Our Approach, Users Navigate Over A Single Large Information Surface" .......... 21

b) The Combination Of Zaurus And Pad++ Would Have Been Inoperative .............................. 22

B. The Preserving Claims Are Not Obvious In View Of Hara, Tsutsumitake, And Zaurus .............................................. 24

1. Hara Teaches Away ........................................................ 24

2. Zooming Is Not The Same Thing As Re-Sizing ............. 24

3. Hara Does Not "Preserve" .............................................. 25

4. Tsutsumitake Does Not Disclose Zooming Or "Preserving" ................................................................... 25

5. There Was No Motivation To Combine Zaurus With Hara Or Tsutsumitake............................................ 26

C. The Smart Zooming Claims Are Not Obvious .......................... 27

1. Petitioners Do Not Address Claim Construction............. 27

2. Petitioners Concede That The "Smart Zooming" Claims Are Not Obvious In View Of Zaurus, Hara, And Tsutsumitake .......................................................... 28

3. The Smart Zooming Claims Are Not Obvious In View Of Zaurus And Pad++............................................ 28

a) Pad++ Does Not Recognize Images Or Columns Within A Webpage ................................ 28

b) Zaurus Is Dumb Zooming .................................... 30

D. The Board Erred In Its Treatment Of Objective Indicia............ 30

**Page**

1. Petitioners Fail To Address The Relevant Objective Indicia .... 31

2. Petitioners Belatedly Respond To The Objective Indicia Identified By SoftView .... 31

III. THE BOARD VIOLATED ITS OWN RULES .... 33

A. Standard Of Review .... 33

B. SoftView Did Not Waive The Argument .... 34

C. Petitioners' Justification For The Reply Declaration Is Not Credible .... 34

D. SoftView Was Not Afforded "An Opportunity To Be Heard," Prejudicing SoftView .... 35

E. The PTO Should Not Be Permitted To Repudiate Its Own Practice Guide .... 37

F. The Board's Disregard Of Its Own Rules Was An Error Of Law .... 39

IV. CONCLUSION .... 40

CERTIFICATE OF SERVICE .... 41

CERTIFICATE OF COMPLIANCE .... 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Software Design Corp. v. Fiserv, Inc.*,
641 F.3d 1368 (Fed. Cir. 2011) .......... 12

*Appalachian Power Co. v. Envtl. Prot. Agency*,
208 F.3d 1015 (D.C. Cir. 2000) .......... 37, 38

*Badasa v. Mukasey*,
540 F.3d 909 (8th Cir. 2008) .......... 23

*Beaird v. Seagate Tech., Inc.*,
145 F.3d 1159 (10th Cir. 1998) .......... 39, 40

*CBS Interactive Inc. v. Helferich Patent Licensing, LLC*,
IPR2013-00033, Paper 118 (P.T.A.B. Oct. 23, 2013) .......... 37

*DePuy Spine, Inc. v. Medtronic Sofamor Danek*,
567 F.3d 1314 (Fed. Cir. 2009) .......... 23

*Doebele v. Sprint/United Mgmt. Co.*,
342 F.3d 1117 (10th Cir. 2003) .......... 39

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .......... 22, 23

*Lighting Ballast Control v. Phillips Elecs. N. Am. Corp.*,
744 F.3d 1272 (Fed. Cir. 2014) .......... 27

*McLouth Steel Prods. Corp. v. Thomas*,
838 F.2d 1317 (D.C. Cir. 1988) .......... 38

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012) .......... 22

*Patton v. Sec'y of Dep't of Health and Human Servs.*,
25 F.3d 1021 (Fed. Cir. 1994) .......... 33, 39

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......... 12

**Page(s)**

*Plantronics, Inc. v. Aliph, Inc.*,
724 F.3d 1343 (Fed. Cir. 2013) ........................................................ 30

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ........................................................ 31

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
No. 13-854 (U.S.) ........................................................ 3

**Regulations**

37 C.F.R. § 42.23 ........................................................ 38, 40

Office Patent Trial Practice Guide,
77 Fed. Reg. 48756 (Aug. 14, 2012) ........................................................ 38, 40

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| A-__ | Appendix at page(s) __ |
| SV.Br.-__ | SoftView's corrected opening brief in Case No. 2014-1600 at page(s) __ |
| Pet.Br.-__ | Petitioners' consolidated opening brief at page(s) __ |
| Int.Br.-__ | PTO's corrected brief in Case No. 14-1600 at page(s) __ |

# INTRODUCTION[1]

There is no evidence, substantial or otherwise, supporting the Board's findings that the prior art combinations "preserve" under the correct claim construction or teach "smart zooming." Moreover, the Board failed to properly address objective indicia of non-obviousness. Finally, the Board prejudiced SoftView by refusing to exclude Petitioners' new reply evidence and argument in violation of the Board's own rules. The Board's decision should be reversed.

[1] SoftView files the same reply brief for Appeal Nos. 2014-1599 and 2014-1600.

## STATEMENT OF THE CASE

Petitioners wrongly contend that SoftView did not seek to capture the subject matter of the "preserving" claims until after the introduction of Apple's iPhone in January 2007. Pet.Br.-9. The '353 application, filed in January 2005, contained claims from Application No. 09/878,097, filed in June 2001, reciting "retrieving Web content…defining an original page layout and attributes of the Web content" and "retain[ing] the original page layout and attributes of the content defined by its original format when rendered" on a "cellular phone" or "handheld computer." A-001727-28 (claim 8); A-001683. This claim, and others like it, were directed not towards the Apple iPhone (which would not be announced until years after SoftView filed Application No. 09/878,097), but towards the award-winning, commercially-available SoftView™ browser. *See* A-008833; A-001092-93.

# ARGUMENT

## I. THE BOARD'S CONSTRUCTION IS UNREASONABLY BROAD[2]

In the District Court Case, Petitioners argued that the intrinsic evidence dictates that "'original' **must** refer to layout as viewed on a conventional desktop browser…" A-004909-10.[3] SoftView agreed with this statement then and agrees with it now. But in the IPRs, Petitioners argued that "original" **cannot** refer to a conventional desktop browser. A-000343. Petitioners fail to identify evidence supporting their diametrically-opposed construction.

### A. The Claim Language Supports SoftView's Construction

#### 1. Petitioners And The Board Conflate The "Translating" and "Preserving" Limitations

Petitioners and the Board are wrong when they say that "what is 'preserved' can be no more than what was translated…" *See* Pet.Br.-22. They conflate the separately claimed "translating" limitation with the "preserving" limitation. SV.Br.-32-33. These two limitations, read together, require (a) translating as much of the original content as is needed to (b) preserve the original page layout, functionality, and design of the webpage as it would appear on a conventional desktop browser.

[2] The standard of review for claim construction in IPRs is not at issue in *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, No. 13-854 (U.S.), and, accordingly will not affect these appeals.

[3] All emphasis in quotations is added unless indicated otherwise.

The difference in language is intentional because the browser need not translate HTML code that does not affect original page layout, functionality, and design, such as comment tags or keyword metatags. Otherwise, an unscrupulous copyist could design around the claims by purposefully not translating HTML content that is unnoticeable when rendered.

### 2. "Original Page Layout" Exists Before Translating

Petitioners argue that "page layout" does not exist until after HTML content is translated by the browser. *See* Pet.Br.-7-8. However, the limitation "original page layout" has its antecedent basis in the "requesting access" limitation, where a user requests access to a "an original Web page…comprising HTML-based Web content…defining…an original page layout…on the Web page." A user requests such access before the browser performs any processing or translating. Thus, the patent claims clearly recite that "an original page layout" exists before any processing or translating.

### 3. "Portion" Is Not Present In Every Claim

The Board premised its unreasonable construction on the term "portion" in certain claims. A-000011; A-000047. SoftView explained that the Board's "hook" for its construction is not present in claims 36, 149, and 252 of the '353 Patent. SV.Br.-33. Petitioners have no response to this argument.

#### 4. The Board's Finding Regarding Claim 36 Is Incorrect

Clause (D) of claim 36 of the '353 Patent requires "render[ing] the Web page on the display" and "re-render[ing] the display." A-000873 (25:51-52). Petitioners state that "[t]he Board found that the first rendering…'is not limited to one that preserves the original page layout, function, and design.'" Pet.Br.-23-24. But claim 36 specifies that "preserving" must occur "at each zoom level and panned view." A-000873 (25:52-57). <u>This necessarily includes the initial rendering</u> in addition to subsequent zoomed views.

### B. The Prosecution History Supports SoftView's Construction

#### 1. Petitioners Rely Upon An Out-Of-Context Statement

Petitioners argue that a single prosecution statement defines the "preserving" limitation. Pet.Br.-26-29. SoftView has explained how this statement, in its proper context, simply clarified that "preserving" on a mobile browser does not require creating an "identical" or "exact scaled replica" of the webpage as rendered on a <u>particular</u> desktop browser. SV.Br.-48-49.

Moreover, certain aspects of a desktop webpage are <u>not</u> HTML-based content (and are therefore not required to be preserved under SoftView's claims). The figures cited by Petitioners on page 27 of their brief are particularly misleading. The prosecution history states that the red-boxed content missing from the Explorer desktop webpage is due to "certain features of the IE7 browser…[being] disabled for security reasons" or due to that

installed version of Explorer "missing some plug-ins." A-001112. The prosecution history emphasizes that "embedded ***non-HTML content***," such as the plug-in content, is irrelevant to the claims. A-001115-16 (emphasis in original); *see* A-001117.

Petitioners' hyperlink discussion is similarly misleading. Pet.Br.-28. HTML code does not tell a browser how to implement the activation of the hyperlink. Thus, a mobile browser can prioritize tap to zoom on a column over activating a hyperlink at a particular zoom level. A-001118.

Finally, Petitioners' characterization of the prosecution history is refuted by the specification, which summarizes the invention as "maintaining the look and feel of browsing…webpages with a conventional desktop browser." A-000861 (2:53-55).

### 2. SoftView Made A Clear And Unmistakable Disavowal

SoftView clearly and unmistakably disavowed browsers that did not preserve the original page layout, functionality, and design of webpages as they would appear on a conventional desktop browser. SV.Br.-39-41. Petitioners' arguments otherwise fly in the face of the record.

- Petitioners argue that the first statement is not definitional. Pet.Br.-29-30. They are wrong. The passage first describes how the invention "<u>**preserv[es] the look and feel**</u> (*i.e.*, functionality) <u>of browsing such [web]pages **with a conventional desktop browser**</u>."

A-001104. The passage then concludes that "[i]n order to clarify this result, Applicants have amended many of the claims to recite, in part, '**preserves** the original page layout, functionality, and design of the [HTML-based Web page] content.'" *Id*. The passage then cites claim 1 of the '353 patent as an example. A-001104-05.

- Thus, SoftView clearly and unmistakably tied its characterization of the invention ("preserving the look and feel…of browsing such [web]pages with a conventional desktop browser") with the language of the "preserving" limitation added in prosecution. *Id*.

- Petitioners argue that other statements were made before the statement upon which Petitioners rely. Pet.Br.-30. But these statements still characterize the claimed invention, and in one case, distinguish prior art from the claimed invention, arguing that what is preserved "substantially retains the original page layout and attributes of the content defined by its original format when rendered." A-001382.

- Petitioners argue that the remaining statement describing a product demonstrated to the examiner is irrelevant. Pet.Br.-30. But SoftView clearly stated that its description was commensurate with the scope of the claims: "a demonstration of a device and software based on the

underlying teachings of the claimed invention was presented…Inventor Gary Rohrabaugh demonstrated the SoftView™ browser's ability to…perform[] browser functions…while preserving the layout, functionality, and design of the Web pages in a manner similar to desktop browser[s]…Claims corresponding to each of these features are included in the present application." A-001092-93.

#### 3. The Examiner Agreed With SoftView's Characterization Of The Claims

Petitioners dispute that the examiner agreed with SoftView's characterization of the claims. Pet.Br.-30. But they ignore the '353 Patent Notice of Allowance:

> Under the broadest reasonable interpretation of the claimed invention consistence [sic] with the Applicant's Specification, the prior art of record fail [sic] to teach all of the Applicant's claimed limitation. **The claimed invention advantageously provides a finer level of detail when displaying HTML Web pages, designed for desktop computers, on a "small-screen" device**, such as a cell phone and/or a PDA.

A-000941.

#### 4. The Images From The Prosecution History Are Evidence Of The Meaning Of The "Preserving" Limitation

To provide the public with a further understanding of the "preserving" limitation, SoftView provided side-by-side comparisons between a desktop webpage and a "preserved" webpage on a mobile device. A-008171-88.

Petitioners argue that such images are "distract[ing]" and "incorrectly relie[d]" upon because they are not in the specification and were not supported by an expert declaration. Pet.Br.-30. Petitioners cite no authority supporting these propositions, nor do they provide any explanation for why an expert declaration was necessary when such images were provided by SoftView to illustrate the meaning of the "preserving" limitation. *See id*.

Finally, Petitioners suggest that the images appear only in the '926 prosecution. *Id*. But similar comparisons appear in the '353 prosecution:




| Sony Clié running Palm OS | Pocket PC running Windows CE OS |
|---|---|
|  |  |
| Image 1A | Image 1B |

A-001097-98.




*FIG. 1*

A-001107.

### C. The Specification Supports SoftView's Construction

Petitioners address the specification almost as an afterthought, even though it is "the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005).

#### 1. "Preserving" Is Clearly And Unmistakably Tied To "Maintaining The Look And Feel Of Browsing Such Web Pages With A Conventional Desktop Browser"

Petitioners first argue that the phrase "look and feel" is not used with the word "preserving" in the specification. Pet.Br.-31-32. The reason for this, Petitioners argue, is that the word "preserving" "was added long after the specification was written." *Id*. Petitioners cite no case law for the proposition that specification language cannot be used to interpret and support claim language added during prosecution and not appearing *in haec verba* in the specification. And for good reason – the law says otherwise. *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1379-80 (Fed. Cir. 2011) (using specification to construe claim term not appearing in specification).

Moreover, as discussed above at 5-8, when SoftView added the "preserving" limitation in prosecution, SoftView clearly and unmistakably tied this limitation to the "look and feel" language from the patent specification.

Finally, the meaning of the "preserving" limitation does not rest on the word "preserving" in a vacuum. The "preserving" limitation requires "preserving the <u>original</u> page layout, functionality, and design." A-000873

(25:54-56). "Original" appears throughout the patent specification and clearly refers to layout, functionality, and design as they would appear on a conventional desktop browser. *See, e.g.*, A-000837 (abstract) ("[T]he rendered displays provide substantially the same or identical layout as the original Web page, enabling users to easily navigate to selected content and features on familiar Web pages.").

The specification evidence is so compelling that, in the District Court case, Petitioners relied upon the same evidence cited by SoftView to argue that "'original' must refer to layout as viewed on a conventional desktop browser, which is how the HTML is defined at the time of request – i.e., before it is interpreted by the browser in question." A-004909-10.

### 2. The Board's Construction Is Inconsistent With The Specification

Petitioners suggest that the Board's construction is correct because it preserves some look and feel. Pet.Br.-32. But this construction is inconsistent with the specification, which refers to maintaining the "look and feel" of webpages on a conventional desktop browser. *See supra* at 12. Petitioners have still not identified any language from the specification that teaches, as the invention, rendering a webpage on a mobile browser that does not preserve the look and feel of the webpage on a conventional desktop browser.

### 3. Petitioners' Citations To The Specification Are Unavailing

Petitioners cite an example of HTML code from the specification, but fail to explain how it supports their construction or undercuts SoftView's. Pet.Br.-32.

Petitioners also cite a passage from the specification discussing the three-step pre-rendering process used by conventional browsers. *Id*. It is not clear how this passage supports Petitioners' construction or undercuts SoftView's. Petitioners simply assert that this passage stands for the proposition that "there is no page layout until the HTML code has been processed by the browser's rendering engine." *Id.* But the passage cited by Petitioners says no such thing. It simply describes the steps to go from the layout described by HTML (*i.e.*, code) to the layout that appears on screen (*i.e.*, pixels). *See, e.g.*, A-000853; A-000868 (15:45-50; 16:19-22); A-000869 (17:16-16; 17:31-34).

Petitioners also argue that "HTML code has no layout until it is rendered [by the browser]." Pet.Br.-7. But that argument is explicitly contradicted by the specification, which states that "HTML is a standardized language that describes the layout of content on a web page…" A-000864 (7:56-57). Moreover, the claims clearly contemplate the existence of "HTML-based Web content…defining…an original page layout…on the Web page" <u>before</u> the

browser ever processes the HTML-based Web content. A-000871 (22:28-31). In the District Court Case, Petitioners agreed. A-004909-10.

### D. Petitioners' Other Arguments Are Without Merit

#### 1. SoftView's Demonstratives Illustrate The Unreasonableness Of The Board's Construction

It is one thing to read the written words of the Board's construction. It is another to visualize that construction in demonstratives.

For example, an illustrative device that translates only images, and thus requires maintaining only images, would result in the following.




Desktop




Handheld

SV.Br.-29.

An illustrative device that translates only forms, and thus requires maintaining only forms, would result in the following.




Desktop




Handheld

SV.Br.-31.

Comparing these demonstratives with the specification's and prosecution's discussions of the claimed inventions confirms the unreasonable breadth of the Board's construction.

Petitioners' other arguments are without merit.

- The argument that the Board's construction requires the browser to preserve whatever is translated is a red herring because there is no

limitation of how little needs to be translated. Pet.Br.-33-34. Preserving only images or only forms would still fall within the scope of the Board's construction.

- SoftView's claims, properly construed, do not lead to absurd results. While not every aspect of HTML code needs to be translated, those aspects that are translated must preserve the look and feel of the webpage as it would appear on a conventional desktop browser.
- These demonstratives are not "inoperable" embodiments. *Cf.* Pet.Br.-34. They simply show how divorced the Board's construction is from the intrinsic record.

#### 2. "Conventional Desktop Browser" Needs No Construction

Petitioners argue that SoftView's construction does not define "conventional desktop browser." Pet.Br.-24. But this term is easily understood by a PHOSITA to mean commonly-used desktop browsers such as Explorer, Safari, or Chrome. Petitioners had no difficulty interpreting this term in the District Court. A-004908 ("as viewed on a conventional desktop browser, such as Internet Explorer or Netscape Navigator").

## II. THE BOARD ERRED IN FINDING OBVIOUSNESS

### A. The "Preserving" Claims Are Not Obvious In View Of Zaurus And Pad++

There is no Board finding that the combination of Zaurus and Pad++ "preserves" under the correct construction.

#### 1. Zaurus Does Not Preserve

The Board's "finding" that Zaurus "falls within the scope of Patent Owner's stated understanding of its proposed construction" is based on a distortion of SoftView's construction. SV.Br.-51-52. The Board conceded that "Zaurus does not implement a desktop browser." A-000018; A-000055.

#### 2. Pad++ Did Not Disclose The "Preserving" Limitation

The Board did not make a finding that Pad++ "preserves" under the correct construction. Petitioners concede this point and simply reiterate the Board's finding that Pad++ "preserves the original page layout and design of the HTML code <u>of that portion of the web page that has been translated or rendered</u>." Pet.Br.-40.

#### 3. The Board Did Not Decide Obviousness Under The Correct Construction

Because the Board did not make any finding that either Zaurus or Pad++ "preserves" under the correct construction, and there is no evidence – substantial or otherwise – that either Zaurus or Pad++ "preserves" under the correct construction, the Board's obviousness decision should be reversed.

#### 4. SoftView Had No Opportunity To Refute Dr. Grimes' "Unrefuted Testimony"

Petitioners argue that their expert "offered **unrefuted** testimony" regarding how a PHOSITA would have further modified the combination of Pad++ and Zaurus. Pet.Br.-41. But SoftView had no opportunity to refute this reply testimony because the Board denied SoftView's request for a surreply. A-000333; A-000755. The Board even permitted Petitioners to raise new prior art combinations (Pad++, Zaurus, and assorted prior art browsers) for which SoftView could not submit rebuttal evidence. *See, e.g.*, A-006688 (¶¶ 85-86).

#### 5. Applying The Teachings Of Pad++ To Opera, Mosaic, Or Navigator Was Not Obvious

The Board acknowledges "that Bederson did not implement all, or even many, of the known capabilities of HTML." A-000023; A-000060. Petitioners respond by arguing that "adding to the existing Pad++ coding to support additional HTML tags, modifying a preexisting browser [(identifying Opera, Mosaic, and Netscape Navigator)], or writing original code according to the teachings of Pad++" would have been obvious. Pet.Br.-41. Not only are Petitioners relying upon new prior art for which SoftView had no opportunity to respond, but Petitioners are wrong.

- Nothing in Pad++ teaches or suggests preserving the original page layout, functionality, and design of a webpage as it would be viewed on a conventional desktop browser. This follows the route

taken by other "simplified" browsers at the time that stripped out layout, functionality, and design. A-002766 (describing Pad++ as a "simple" web browser). Thus, it would not have been obvious from the teachings of Pad++ to support additional tags or modify a full-featured browser.

- Pad++ explicitly taught changing the appearance of an object such as a webpage using "semantic zooming": "Objects in Pad++ can be implemented so that they change the way they look depending on, among other things, their size, complexity of the current view, characteristics of users' task, lenses positioned over them, or the type of interface physics currently operational." A-002568. Thus, Pad++ teaches away from the "preserving" limitation.

- In 2001, conventional desktop browsers included Explorer and Navigator, both of which had been in existence for several years. A-000864 (7:30-32); A-008780 (¶ 17) (Reinman). The HTML 4.01 specification was published in December 1999. A-000667 (footnote 2). In order to practice the "preserving" limitation, the Pad++ browser would need to support a similar level of HTML 4.01 compliance. This would require the implementation of dozens of missing HTML tags (*see* A-008784-87 (¶¶ 25-34) (Reinman)), not simply "more" tags.

- Petitioners' argument that SoftView's specification discloses no software for translating HTML into zoomable graphics is misleading. SoftView's specification provides "[d]etails of the HTML translation process," including flowcharts and schematic diagrams, at column 12, line 12 through column 18, lines 32 and in Figures 4A-6. A-000866-69. The Pad++ References provide no similar disclosure.

#### 6. There Was No Motivation To Combine Zaurus And Pad++

##### a) Pad++: "In Our Approach, Users Navigate Over A Single Large Information Surface"

SoftView previously discussed how the Pad++ references specifically and repeatedly teach that Pad++ requires "high quality" graphics on "a large, high-resolution display." SV.Br.-58-59. There is no discussion whatsoever of how to implement the teachings of Pad++ on a small, low-resolution display, and in fact Pad++ teaches away from the use of small, low-resolution displays. SV.Br.-56-60. The Pad++ references could not be any clearer: "In our approach, users navigate over a single large information surface." A-002597.

The two conclusory statements cited by Petitioners, winnowed from seven Pad++ publications totaling over 330 pages, stating that Pad++ could be used with PDAs are insufficient motivation to combine in the face of specific and repeated teachings away from the use of Pad++ on small, low-resolution

displays. *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1295-96 (Fed. Cir. 2012) (rejecting selective reliance on a disclosure in reference when prior art as a whole taught away). The *KSR* case is distinguishable because, in that case, there was no specific and repeated teaching away from using the prior art for the purposes recited in the claims. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 425-26 (2007).

#### b) The Combination Of Zaurus And Pad++ Would Have Been Inoperative

Petitioners contend that inoperability is based on the teachings of the references, not the physical devices disclosed in the references. Pet.Br.-44. But SoftView's inoperability argument is based on just that – the teachings of the Pad++ references. Thus, this is not, as Petitioners suggest, an example of where two prior art devices are simply not physically combinable.

The Pad++ references teach that implementing Pad++ was not possible using anything other than desktop and workstation hardware. *See* A-008794-800 (¶¶ 54-72) (Reinman). The teachings of Pad++ (smooth, real-time zooming and avoiding slow, jerky systems) are inextricably tied to the capabilities of this hardware. *Id.* Thus, reading the Pad++ references, a PHOSITA would not have thought to take the teachings relied upon by Petitioners and apply them to a hardware-challenged device such as Zaurus.

The improperly admitted Reply Declaration does not attempt to refute these points. Instead, Dr. Grimes argues that "the Zaurus hardware would have been upgraded" and the Pad++ software would have been "modified." A-006702-03 (¶ 113) (Grimes). He even makes reference to an "imaginary hardware graphics accelerator." *Id.* But motivation to combine cannot be supplied, and inoperability cannot be overcome, by vague and conclusory references to upgrades and modifications not disclosed in the prior art.

Petitioners also challenge SoftView's citation to a pre-*KSR* opinion (ignoring their own citation to a 1983 opinion a few lines earlier). *See* Pet.Br.-44. But the doctrine of inoperability was not repudiated by *KSR*. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek*, 567 F.3d 1314, 1326 (Fed. Cir. 2009) ("[A] reference teaches away from a combination when using it in that combination would produce an inoperative result.") (citation omitted).

Petitioners respond to the testimony of Scott Forstall by quoting a Wikipedia entry. Pet.Br.-45. The freely-editable Wikipedia is not sufficiently reliable to serve as evidence on a contested, material issue like motivation to combine.[4] *See Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008) (criticizing judge's use of Wikipedia). Indeed, there is no evidence that the

[4] SoftView cited Wikipedia for the limited purpose of establishing uncontested facts regarding Mr. Forstall's academic background.

Wikipedia statement Petitioners cite was made by either Mr. Forstall or Steve Jobs.

### B. The Preserving Claims Are Not Obvious In View of Hara, Tsutsumitake, And Zaurus

#### 1. Hara Teaches Away

SoftView previously explained that Hara (1) does not disclose zooming and (2) explicitly teaches away from "preserving" page layout and design. SV.Br.-63-66. Petitioners point to no contrary evidence.

#### 2. Zooming Is Not The Same Thing As Re-Sizing

Petitioners continue to equate (a) zooming on an image with (b) re-sizing or magnifying an image as part of the <u>pre-rendering</u> process. Pet.Br.-51-53. Zooming on an image requires displaying an image in a first rendering and then enlarging the image (zooming in) or shrinking the image (zooming out) in a second rendering. But in Hara, the image is displayed only once and at a single enlarged size. A-008804-06 (¶¶ 86-93) (Reinman). This is not zooming. This distinction is important because the claims require rendering a webpage and "preserving" the webpage at multiple zoom levels. *See, e.g.*, A-000873 (25:39-57); A-008131 (29:25-32).

The evidence cited by Petitioners purportedly showing that Hara discloses zooming includes statements by their expert (which should have been excluded) that "Hara discloses the added functionality of zooming on specific

elements within a web page." Pet.Br.-53. However, as SoftView has explained, this statement and others mischaracterize Hara, which is limited to re-sizing an image only once as part of the pre-rendering process. SV.Br.-63-66.

The Board's finding regarding Hara is unavailing because it does not stand for the proposition cited by Petitioners. The finding states that the "magnification [of the image] depend[s] upon the resolution of the client device." A-000027; A-000604. This statement that "magnification" (singular) depends upon the resolution of the client device confirms that Hara is not discussing zooming.

### 3. Hara Does Not "Preserve"

SoftView explained that Hara teaches away from "preserving" because Hara teaches that it is necessary to change the original page layout and design. SV.Br.-63-66. Petitioners point to no contrary evidence and do not even use the word "preserve" (or variations thereof) to describe Hara's teachings. Instead, Petitioners argue that "Zaurus…teaches preserving." Pet.Br.-53. But this has no bearing on what Hara teaches.

### 4. Tsutsumitake Does Not Disclose Zooming Or "Preserving"

SoftView explained that Tsutsumitake does not disclose zooming or "preserving." SV.Br.-66-67. Petitioners point to no contrary evidence.

Instead, Petitioners point to the Board's finding that Tsutsumitake discloses converting external content into a scalable vector format. Pet.Br.-53. This finding says nothing about zooming or "preserving," and Petitioners do not argue otherwise. Instead, Petitioners rely upon Zaurus for "zooming." Pet.Br.-53. But this has no bearing on what Tsutsumitake discloses.

#### 5. There Was No Motivation To Combine Zaurus With Hara Or Tsutsumitake

Petitioners argue that "the three references each 'relate to common mobile device technology and are directed at solving [the problem of] zooming and panning of display content.'" Pet.Br.-54. But neither Hara nor Tsutsumitake discloses zooming. Petitioners also do not point to evidence of "panning" in Hara or Tsutsumitake. Thus, there was no motivation to combine Hara or Tsutsumitake with Zaurus on the basis of either "zooming" or "panning." There is also no substantial evidence that Tsutsumitake relates to mobile devices because there is no mention of wireless, cellular, mobile, phone, or PDA technologies in Tsutsumitake. The only "evidence" is a conclusory statement by Petitioners' expert, which should have been excluded.

Finally, even if all three references were combined, the combination would still not include the "preserving" limitation properly construed. Hara and Tsutsumitake do not disclose "preserving" at all. And the Board has already made a finding that Zaurus did not preserve the original page layout,

functionality, and design as they would appear on a conventional desktop computer. A-000018; A-000055.

### C. The Smart Zooming Claims Are Not Obvious

Petitioners' characterization of "smart zooming" as "makeweight" is belied by the widespread adoption of this feature. *See* Pet.Br.-47-50. The co-developer of Apple's iPhone user interface testified that "smart zooming" in the iPhone browser (i.e., "tap-to-zoom") is very important. A-008904 (48:2-5); *see also* A-004796 (758:16-19) (another Apple iOS developer testifying that "tap-to-zoom" is "a significant feature in the iPhone"). Indeed, Apple successfully asserted its own (later-filed) "smart zooming" patent against Samsung. *See* A-004791 (753:9-11).

#### 1. Petitioners Do Not Address Claim Construction

SoftView argued that (1) the Board never set forth a construction for the "smart zooming" claims; (2) to the extent that the Board's construction can be discerned, it is unreasonably broad; and (3) with respect to claims 52 and 317 of the '353 patent and 40 and 41 of the '926 patent, the correct construction requires (a) recognizing that an image or column in a translated webpage was "tapped" and (b) performing the recited zooming operation based on such recognition. SV.Br.-74-75.

Thus, claim construction is a threshold issue that needs to be decided by this Court *de novo*. *See, e.g.*, *Lighting Ballast Control v. Phillips Elecs. N. Am.*

*Corp.*, 744 F.3d 1272, 1276-77 (Fed. Cir. 2014) (en banc). Petitioners do not address these arguments at all.

### 2. Petitioners Concede That The "Smart Zooming" Claims Are Not Obvious In View Of Zaurus, Hara, And Tsutsumitake

SoftView argued that the Board's findings regarding the obviousness of the "smart zooming" claims in view of Zaurus, Hara, and Tsutsumitake were incomprehensible and not supported by substantial evidence. SV.Br.-75-77. Petitioners did not respond.

### 3. The Smart Zooming Claims Are Not Obvious In View of Zaurus And Pad++

Because the Board applied an unreasonable (and unspecified) construction, it did not make any finding regarding whether Pad++ or Zaurus (a) recognized an image or column in a translated webpage and (b) performed the recited zooming operation based on such recognition. Furthermore, there is no evidence, substantial or otherwise, of either (a) or (b) in the prior art.

#### a) Pad++ Does Not Recognize Images Or Columns Within A Webpage

Petitioners attempt to equate two Pad++ zooming commands (center and centerbbox) with "smart zooming." Pet.Br.-47-50. However, there is no evidence supporting Petitioners' assertion that Pad++ "recognize[s] individual elements including images or columns within a web page" and decides whether

to implement the center and centerbbox commands based on such recognition. *Id*.

- Citations to A-006705-12 come from the Reply Declaration, which should have been stricken. *See* Pet.Br.-48; *see infra* at 33-40.
- Dr. Grimes simply states that it is possible to use these commands to manually zoom in on an element within a webpage. *See* A-006710-12 (¶¶ 132-135) (Grimes). This is "dumb zooming." SV.Br.-70-74. These commands do not (a) recognize particular types of elements within a translated webpage (such as images or columns) or (b) perform the recited zooming operation based on such recognition. Moreover, these commands require multiple mouse operations, keystrokes, and entry of non-intuitive user-identified parameters to implement the command, as opposed to the simplicity of a single "tap" (claims 52 and 317 of the '353 patent and 40 and 41 of the '926 patent). *See* SV.Br.-71-73; *cf.* A-000873 (26:61-63); A-000884-85 (48:51-50:3); A-008130 (27:28-45).
- The "Oval Document Layout" referenced by Dr. Grimes zooms in on pages (i.e., thumbnails) – not elements within a translated webpage. *See* A-006708 (¶ 122) (Grimes); *cf.* A-002644-46.

- "[C]lick[ing] on a piece of text" has nothing to do with webpages or browsers. Pet.Br.-48. This is a different application, "an outline viewer." A-002729. Moreover, the text box is a single object. *Id.* This is not analogous to tapping on an individual element (perhaps one of hundreds of elements) within a compound webpage object, recognizing that element as being of a particular type (e.g., a column), and performing the recited zooming operation based on such recognition.
- Petitioners' argument that a webpage is "a compound object… composed of many characters, line segments and images" is unavailing. Pet.Br.-49. A webpage is treated by Pad++ as a single object. *See* A-008801 (¶ 75) (Reinman).

#### b) Zaurus Is Dumb Zooming

Petitioners admit that Zaurus "dumb zooms" using scrolling keys or bars. Pet.Br.-50.

### D. The Board Erred In Its Treatment Of Objective Indicia

Petitioners provide no meaningful response to SoftView's argument that the Board conducted an improper post hoc analysis. *See* Pet.Br.-55-59. This legal error alone warrants reversal. *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1355 (Fed. Cir. 2013).

### 1. Petitioners Fail To Address The Relevant Objective Indicia

Petitioners continue to address commercial success because their IPR arguments and the Board's decision both fail to address the objective indicia actually advanced by SoftView. Pet.Br.-56-57. Thus, there are no factual findings by the Board regarding the objective indicia actually advanced by SoftView.

Petitioners also mischaracterize SoftView's objective indicia claim charts as mere "attorney argument." Pet.Br.-56. These charts were provided by SoftView's expert. A-008807 (¶ 100) (Reinman) ("These claim charts show the enormous praise received by those products by the industry for functionality recited in the claims.").

### 2. Petitioners Belatedly Respond To The Objective Indicia Identified By SoftView

Petitioners belatedly argue that SoftView did not establish praise by others, long felt-need for the invention, failure by others, and teaching away. Pet.Br.-57-59. However, these arguments should be rejected because (1) Petitioners waived these arguments by never raising them in the IPR and (2) the Board's decision did not address SoftView's evidence. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[T]his court does not 'review' that which was not presented to the district court.").

Moreover, Petitioners' substantive arguments are meritless. SoftView's IPR and appeal briefing both establish the requisite nexus between the objective indicia identified by SoftView and the claims. By way of example only:

- Publications praising the claimed invention as "bring[ing] you the 'real internet'…not dumbed down pages simplified for mobile phones." SV.Br.-79. Such praise was directed at the specific feature of the accused devices that the Board determined was at issue (an "Internet browser on a handheld device"). A-000032; A-000068.
- A long-felt need for "look[ing] up things online when" people are on the go, and of "the mobile web fail[ing] to meet their needs." SV.Br.-81. This evidence establishes that the alternatives to SoftView's invention, stripper browsers and WAP, were not meeting consumers' needs.
- Attempts by others to solve the problem of browsing the Internet using mobile devices, and taking a different path. SV.Br.-80-82.

Browsers such as Zaurus stripped out content and displayed webpages without their original page layout, functionality, and design, rendering such webpages difficult to use. *See* A-008791-93 (¶¶ 45-51) (Reinman). Consequently, the industry pursued WAP, mobile webpages designed

specifically for mobile devices, which was still unsatisfactory to consumers. A-008812 (¶¶ 122-123) (Reinman).

## III. THE BOARD VIOLATED ITS OWN RULES

The PTO and Petitioners describe SoftView's procedural argument as mere dissatisfaction with not "hav[ing] the last word." Int.Br.-18; *see* Pet.Br.-62. This description mischaracterizes the issue. The Board promulgated rules intended to ensure fairness and balance in the IPR process. The Board ignored Petitioners' violation of those rules, depriving SoftView of an opportunity to offer evidence to rebut Petitioners' belated reply evidence.

### A. Standard Of Review[5]

An abuse of discretion exists when a decision is "based on an erroneous conclusion of law or on a clearly erroneous finding of fact." *Patton v. Sec'y of Dep't of Health and Human Servs.*, 25 F.3d 1021, 1029 (Fed. Cir. 1994). "A court's misinterpretation or a misapplication of its own rules is an error of law." *Id.*

---

[5] SoftView does not advocate for a new-grounds-of-rejection rule. Int.Br.-14. SoftView cites *In re Biedermann* in support of its argument that the Board's reliance upon new references in the reply deprived SoftView of notice and an opportunity to respond. SV.Br.-83.

### B. SoftView Did Not Waive The Argument

Petitioners' waiver argument is meritless. SoftView repeatedly objected to Petitioners' belated reply evidence in violation of the Board's rules. A-000314-330; A-000333-34; A-000363-75; A-000377-94.

### C. Petitioners' Justification For The Reply Declaration Is Not Credible

Petitioners justified filing the 90-page Reply Declaration because they purportedly could not have "anticipated" the need to address Zaurus and raise a new claim construction in the Petitions. Pet.Br.-64. The facts show otherwise:

- SoftView did not raise a new claim construction issue. SoftView's construction for "original" is the same construction agreed to by the parties in the District Court case. A-004909-10. <u>Petitioners have never denied this fact</u>.
- SoftView had explained in District Court briefing <u>before the Petitions were filed</u> that the "preserving" limitation requires preserving "the original layout, functionality, and design of the web page content as it was retrieved from the web page server and as it was intended to be rendered on a desktop [computer]." A-004557. Petitioners have not explained why they "could not have anticipated" that SoftView would advance this same construction in the IPRs.

- The issue of motivation to combine Zaurus with other prior art was first raised by Petitioners in the Petition itself: "[t]he motivation to combine Pad++, Tsutsumitake…with Zaurus is clear…" A-000131; A-000552-53. But the Grimes declarations submitted with the Petitions contained no opinions on Zaurus whatsoever. SV.Br.-82-83. Petitioners have never explained why the original Grimes declarations did not mention Zaurus at all.

**D. SoftView Was Not Afforded "An Opportunity To Be Heard," Prejudicing SoftView**

Both the PTO and Petitioners argue that SoftView was not prejudiced. *See* Pet.Br.-61-64; Int.Br.-24-26. However, a review of Petitioners' appeal brief reveals the degree to which Petitioners rely upon new evidence and new issues on which SoftView was not afforded any opportunity to be heard:

- The Board relied exclusively on the Reply Declaration—and no other evidence—to support a finding of motivation to combine Zaurus and Hara. A-000028; A-000064-65. These portions of the declaration even rely upon **new prior art not cited in the Petitions**. *See* A-006714-25 (¶¶ 142-165) (Grimes). Petitioners cite to this evidence in their appeal brief. *See* Pet.Br.-52 (citing A-006712-15, ¶¶ 136-143); *cf.* A-006714-15 (¶¶ 142-143) (Grimes) (discussing new references).

- Petitioners rely upon the Reply Declaration for evidence that a PHOSITA would have been motivated to combine Zaurus with Pad++. *See* Pet.Br.-43-44 (citing A-006674-704, ¶¶ 56-117).
- Petitioners rely upon the Reply Declaration to establish that (1) "the Zaurus hardware would have been upgraded," (2) the Pad++ software would have been "modified," and (3) after such upgrades and modifications, there would have been a motivation to combine Zaurus with Pad++. Pet.Br.-43-44 (citing A-006674-704, ¶¶ 56-117).
- Petitioners rely upon a **new prior art combination** (the Opera browser, Pad++, and Zaurus) for their argument that the prior art teaches the "preserving" limitation under the correct construction. A-006687-88 (¶¶ 84-86) (Grimes).

This evidence is prejudicial because it goes to issues that are central to the IPRs, and SoftView did not have an opportunity to respond. SV.Br.-82-86.

The PTO argues that SoftView "makes no effort to show that the Board's reliance on the Grimes reply declaration led to the wrong result." Int.Br.-25. Not so. SoftView has explained in detail how the Board reached the wrong result based upon the Reply Declaration. *See, e.g.*, *supra* at 19-24, 26, 29.

Petitioners argue that SoftView had the opportunity to take Dr. Grimes deposition regarding the Reply Declaration. Pet.Br.-41. But to what end? The

Board had already denied SoftView permission to file a surreply with a responsive expert declaration and other evidence. Petitioners also argue that SoftView could have addressed the Reply Declaration at the hearing. Pet.Br.-63. But no new evidence or new arguments may be introduced at the hearing. *See CBS Interactive Inc. v. Helferich Patent Licensing, LLC*, IPR2013-00033, Paper 118 at 2 (P.T.A.B. Oct. 23, 2013) ("By the time the proceeding reaches final oral hearing, nothing new can be presented, no new evidence, no new arguments." (citing the Practice Guide as sole authority). The additional opportunities to be heard identified by Petitioners are illusory.

### E. The PTO Should Not Be Permitted To Repudiate Its Own Practice Guide

Recognizing that the Board did not follow these rules, the PTO attempts to repudiate its own Practice Guide, arguing that SoftView's citations to the Practice Guide are unavailing because the Practice Guide is "not the regulations." Int.Br.-21. But even the PTO admits that the Practice Guide "advise[s] the public on the general framework of the rules." *Id.* Indeed, the Board consistently relies upon the Practice Guide as legal authority in deciding procedural issues, both in this case and in others. A-000334; A-000756; A-000034; A-000070; *CBS Interactive*, IPR2013-00033, Paper 118 at 2. Courts have recognized that an agency's "pronouncements can, as a practical matter, have a binding effect." *Appalachian Power Co. v. Envtl. Prot. Agency*, 208

F.3d 1015, 1021 (D.C. Cir. 2000) ("If an agency acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies or interpretations formulated in the document…then the agency's document is for all practical purposes 'binding.'").

Here, the Board ruled that the Practice Guide was controlling authority for the procedural issue in question, citing to it three times:

> Petitioners' Consolidated Reply should be drawn only to issues raised in the Patent Owner Response. 37 C.F.R. § 42.23; Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48767 (Aug. 14, 2012). <u>The Board will not attempt to sort proper from improper portions of a reply.</u> *Id.* <u>A reply that raises a new issue or introduces new evidence **will not** be considered</u> and may be returned. *Id.* Thus a Motion to Strike by the Patent Owner is not necessary. A surreply by the Patent Owner is also not necessary.

A-000334; A-000756. Having promulgated these rules and having confirmed, in an order, the applicability of these rules in these IPRs, the Board was bound to follow these rules. *See Appalachian Power*, 208 F.3d at 1021; *see also McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1321 (D.C. Cir. 1988) (EPA's "later conduct applying" a purportedly "non-binding" statement of agency policy "confirms its binding character"). This Court should not countenance the PTO's attempt to recant its own Practice Guide.

### F. The Board's Disregard Of Its Own Rules Was An Error Of Law

Under any standard of review, Petitioners' introduction of new prior art and new prior art combinations constituted both new evidence and new issues. Even if the Court were to accept Petitioners' argument that the Reply Declaration was simply responding to SoftView's arguments (which is not true), the rules still do not permit the introduction of such new evidence in reply.

Thus, the Board either misinterpreted or misapplied its own rules. Under an abuse of discretion standard, a misinterpretation or a misapplication of the Board's own rules is an error of law. *Patton*, 25 F.3d at 1029. The PTO's argument analogizing the Board's failure to follow its rules with a trial court's discretion to permit the introduction of new evidence in rebuttal is distinguishable because the Board's own rules explicitly limited its discretion in this regard.

Moreover, even an Article III court's discretion is not unlimited. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) ("Having accepted the reply brief, the district court…had two permissible courses of action. It could either have permitted a surreply or, in granting summary judgment for the movant, it could have refrained from relying on any new material contained in the reply brief."); *see also Doebele v. Sprint/United*

*Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003) (abuse of discretion for court to rely on new evidence presented for the first time in a reply brief). This is because summary judgment proceedings, like IPRs, "implicitly require[] the district court to allow the nonmoving party an opportunity to respond before summary judgment is entered against it." *Beaird*, 145 F.3d at 1163; *cf.* 37 C.F.R. § 42.23 ("A reply may only respond to arguments raised in the…patent owner response.").

Finally, both the Practice Guide and the Board's interpretation of 37 C.F.R. § 42.23 **mandate** that a reply that raises a new issue or introduces new evidence "will not be considered" because the Board "will not attempt to sort proper from improper portions." 77 Fed. Reg. at 48,767; A-000334; A-000756. This means that Petitioners' entire reply brief and Reply Declaration should have been excluded.

## IV. CONCLUSION

The Court should reverse Board's decision.

Dated: November 6, 2014

Respectfully submitted,

By: */s/ Samuel Lu*

IRELL & MANELLA LLP

*Attorneys for Appellant SoftView LLC*

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on November 6, 2014 by:

- ☐ US mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means (by email or CM/ECF)

Alan Heinrich
Name of Counsel

/s/ Alan Heinrich

Law Firm: Irell & Manella LLP

Address: 1800 Avenue of the Stars, Suite 900

City, State, ZIP: Los Angeles, CA 90067

Telephone Number: 310-277-1010

FAX: 310-203-7199

E-mail Address aheinrich@irell.com

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

**_X_** The brief contains _6,999_ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

___ This brief uses a monospaced typeface and contains ______ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

**_X_** This brief has been prepared in a proportionally spaced typeface using _Microsoft Word 2010_ in _Times New Roman, 14 Point_, or

___ This brief has been prepared in a monospaced typeface using ________________ with _________________.

November 6, 2014
Date

*/s/ Samuel Lu*
Samuel Lu
*Attorney for Appellant*
*SoftView LLC*